## GREAT LAKES TRANSIT CORP. *v.* INTERSTATE STEAMSHIP CO. ET AL.

No. 716.   Argued April 28, 29, 1937.—Decided June 1, 1937.

*Mr. John B. Richards,* with whom *Mr. Laurence E. Coffey* was on the brief, for petitioner.

*Mr. Ray M. Stanley,* with whom *Mr. Ellis H. Gidley* was on the brief, for Atlantic Mutual Insurance Co. et al., respondents.

*Messrs. Frederick L. Leckie* and *Thomas H. Garry* filed a brief on behalf of the Interstate Steamship Co., respondent.

Mr. Chief Justice Hughes delivered the opinion of the Court.

A collision occurred in the St. Clair river between the vessel "George D. Dixon" owned by the petitioner, Great Lakes Transit Corporation, and the vessel "Willis L. King" owned by the Interstate Steamship Company. Each owner brought a libel in admiralty against the other. The suits were consolidated. The Atlantic Mutual Insurance Company and other underwriters having paid to the petitioner, under insurance policies procured by it, the amount of cargo damage and loss which petitioner had paid to owners of the cargo carried by the "Dixon," intervened and claimed the right through subrogation to recover the amount thus paid from the Interstate Steamship Company and its vessel, the "King." [1]

The District Court entered a decree adjudging both vessels at fault and that the intervening underwriters should recover from each of the vessels and their respective owners a moiety of the amounts paid and payable under the policies. The decree was affirmed by the Circuit Court of Appeals. 86 F. (2d) 740. In view of the importance of the issue, certiorari was granted, limited to the question of the correctness of the decree in directing recovery from the petitioner.

Petitioner's contention is that the insurance policies were contracts between the underwriters and the petitioner under which the latter was entitled to be indemnified for the liability it had assumed under its bill of lading and its tariff provisions; that the underwriters were not entitled to recover back from petitioner what they had paid it in discharge of their obligation. The underwriters insist that their policies insured cargo and that their pay-

---

[1] The underwriters' claim also covered such additional amounts as they would be called upon to pay as further damages and losses to cargo were ascertained and were paid by petitioner.

ments were made for cargo's benefit; that, the cargo damage and loss having been paid, they were entitled by subrogation to a decree for the full damage against the "King"; that as both vessels were at fault the "King" was entitled to contribution from the "Dixon," and that the decree in avoidance of circuity had fixed the ultimate liabilities by requiring each vessel to pay a moiety.

The cargo on the "Dixon" was carried under uniform bills of lading, approved by the Interstate Commerce Commission, which after referring in § 9 (a) to the exemptions contained in the Harter Act (46 U. S. C. 190 *et seq.*), provided in § 9 (e) as follows:

"If the property is being carried under a tariff which provides that any carrier or carriers party thereto shall be liable for loss from perils of the sea, then as to such carrier or carriers the provisions of this section shall be modified in accordance with the tariff provisions, which shall be regarded as incorporated into the conditions of this bill of lading."

The court below concluded, and we think rightly, that by the applicable tariffs the petitioner waived the saving clauses of the Harter Act and assumed full liability to the cargo owners for loss or damage caused by marine perils.[2]

---

[2] It is sufficient, for the present purpose, to quote the following from one of these tariffs filed by the petitioner:

"Rule No. 15.—Marine Insurance.—Rates Named Herein Include Marine Insurance.—While shipments subject to rates named herein as including Marine Insurance are water-borne at and between lake ports, on the vessels of the Great Lakes Transit Corporation, said corporation assumes liability for loss or damage to said shipments caused by marine perils, to wit: Of the seas and lakes, fire, collision, stranding, jettisons, pirates, assailing thieves, barratry of the master or mariners and all other perils or misfortunes that have or shall come to the hurt or damage of said property, or any part thereof, including general average charges and expenses for which the owner may, under the Maritime Law, be chargeable, but excluding the risks of riots, war or insurrections; any loss from said marine perils for

While these tariffs were not uniform they also either stated or fairly imported that the specified rates should include marine insurance.

The policies of insurance had the following rider, by which the underwriters agreed to insure the Great Lakes Transit Corporation, for account of whom it may concern, loss, if any, to be payable to the Great Lakes Transit Corporation or order,—

"On cargo of any kind owned by the Assured and on the assured's liability to others in respect to cargo of any kind covering same from time said Great Lakes Transit Corporation becomes responsible therefor and until its responsibility ceases, wheresoever the same may be, including risks while on docks, in and/or on cars on docks, piers, wharves, lighters and/or craft, transfers, and all land conveyances, and also to cover upon any advances made by and payment of back charges made by or due from said Assured, and upon any charges of said Assured upon any and all cargo or any portion thereof; from the time the Assured becomes responsible for such cargo including risks of trans-shipment, and under and/or on deck on board of the Assured's steamers:

· · · · ·

"Also to cover through to destination goods delivered by the Assured to other water transportation companies for shipment to destination."

The policies further provided that, the Assured taking "all the risks, perils and liabilities which by law a common carrier by land or water assumes, and also the insurance of said cargo against perils of the seas and lakes" etc., the Assurers agreed "to indemnify and hold harmless" the Assured against any loss or damage to cargo from all such risks, perils, etc., "to the extent which the Assured may be

---

which said Corporation is liable hereunder, to be paid sixty days after proof of loss and proof of interest in said property have been furnished."

held by the owners thereof, under any liability the Assured shall have assumed as common carriers, insurers or otherwise." [3]

We are unable to accept the view that the provisions we have quoted cannot avail petitioner "because it did not take upon itself the insurance of cargo or assume any liability with reference thereto as an insurer"; that "its obligation as to insurance went no further than to require it to procure policies of insurance from others." Petitioner did more than agree to obtain marine insur-

---

[3] The text of the provision referred to is as follows:

"It is agreed between the parties hereto that said steamers are to be employed in carrying cargo, or cargo and passengers, in and on said steamers as aforesaid, the Assured taking upon themselves as to said cargo, or parts thereof, all the risks, perils and liabilities which by law a common carrier by land or water assumes, and also the insurance of said cargo against perils of the seas and lakes, fire, jettisons, barratry, negligence of master or mariners, loss or damage arising through explosions howsoever or wheresoever occurring, bursting of boilers, breakage of shafts or through any latent defect in the machinery or hull, and all other acts, perils or misfortunes that have or shall come to the hurt, detriment, damage to or loss of the said cargo or any part thereof, and the said Assurers agree and undertake to indemnify and hold harmless the said Assured against hurt, detriment, damage to or loss of such cargo from any and all such risks, perils, acts or misfortunes, to the extent which the Assured may be held by the owners thereof, under any liability the Assured shall have assumed as common carriers, insurers, or otherwise, and for any and all claims which said cargo may be called upon to contribute in General Average, and/or for salvage, landing, warehousing and/or special charges, and to cover in like manner duties and any cargo owned by the Assured, and also all advances made by and payment of back charges made by or due from said Assured and/or charges of said Assured upon any and all cargo or any portion thereof.

.        .        .        .        .

"In case of loss, such loss to be paid thirty days after proof of loss and proof of interest are furnished to this company. There shall, however, be deducted from the aggregate of all claims on each east bound or west bound passage, the sum of $1,000."

ance. Petitioner by its tariffs waived the provisions of the Harter Act and became itself an insurer of the cargo against marine perils. The agreement to obtain marine insurance did not detract from that undertaking. Had the underwriters been unable to respond to their contracts, petitioner would still have been liable to the cargo owners upon its own engagement. Having assumed that liability, petitioner was undoubtedly entitled to take out policies for its own protection. See Wyman, Partridge & Co. v. Boston & Maine R. Co., 13 I. C. C. 258, 262; 15 I. C. C. 577, 581; 19 I. C. C. 551, 553. It is a familiar rule that a common carrier "whether liable by law or custom to the same extent as an insurer, or only for his own negligence, may, in order to protect himself against his own responsibility, as well as to secure his lien, cause the goods in his custody to be insured to their full value." *Phoenix Insurance Co.* v. *Erie Transportation Co.,* 117 U. S. 312, 323, 324, and cases there cited. "I see nothing remarkable," said Lord Chief Justice Russell in *Hill* v. *Scott,* L. R. [1895] 2 Q. B. D. 371, 375, "in the shipowner insuring himself. In a case where there was a bill of lading with widely sweeping exceptions, no doubt it would be unnecessary; but where, as here, there is no bill of lading, the shipowner frequently effects an insurance in order to protect himself against liability." See, also, the same case, on appeal, *Id.,* pp. 713, 714.

The policies issued to petitioner explicitly afforded the protection which the petitioner was entitled to seek by virtue of the risks it had assumed. The petitioner was the "Assured" named in the policies. Their terms contemplated that the assured as a common carrier would take upon itself full liability to the cargo owners for all damage and loss due to perils of the sea, and the underwriters expressly agreed to indemnify the assured against that liability. There is no admissible construction of the policies which can eliminate or frustrate that undertak-

ing. In its presence, if ambiguities are raised by other clauses, they must be resolved so as still to give effect to the dominant purpose which the policies clearly reveal.

The fact that the policies insured the petitioner, Great Lakes Transit Corporation "for account of whom it may concern" and that the loss was payable to the Great Lakes Transit Corporation "or order" did not alter the fact that the Great Lakes Transit Corporation was itself directly concerned or detract from the stipulation running to that corporation as a carrier and affording it the specified indemnity. Nor does the fact that the cost of the insurance was included in the carrier's rate affect the question. The rate would properly cover all the reasonable expenses incident to the transportation, and when the carrier assumed liability to the cargo owners for damages and losses caused by marine perils, there was nothing unreasonable in the carrier's protecting itself against that risk by procuring insurance and covering the cost in its rate. Compare Wyman, Partridge & Co. *v.* Boston & Maine R. Co., *supra.* And if it be assumed, as we do assume, that the insurance would inure to the benefit of the cargo owners, that would be a protection to those owners additional to that afforded by the carrier's own engagement which still remained effective and covered by the stipulation in the policies for the benefit of the carrier. By reason of that coverage the underwriters were bound to pay, and did pay, to the petitioner, the amounts which the latter became liable to pay and had paid to the cargo owners under the contracts of carriage.

These payments having been made, the underwriters now seek to recover back from the petitioner a moiety of what they have paid to it. It is said that this results from the admiralty rule for a division of damages in case of fault on the part of both vessels involved in the collision, and that the decree for a recovery by the underwriters from the petitioner is for the purpose of avoiding

circuity of action. The effect none the less is to enable the underwriters to get back one-half of the amounts they had expressly agreed to pay to petitioner for its indemnity.

The underwriters seek to sustain the decree by invoking the doctrine of subrogation, but the equity of subrogation invests the underwriters with the rights of the assured against third persons (*Phoenix Insurance Co.* v. *Erie Transportation Co., supra; Wager* v. *Providence Insurance Co.,* 150 U. S. 99, 108; *Standard Marine Insurance Co.* v. *Scottish Assurance Co.,* 283 U. S. 284, 286) not with a right to override its own obligation to the assured. Thus, when a bill of lading provides that in case of loss the carrier, if liable therefor, shall have the full benefit of any insurance effected upon the goods, the provision limits the right of subrogation of the insurer, upon payment to the shipper, to recover over against the carrier. *Phoenix Insurance Co.* v. *Erie Transportation Co., supra; Wager* v. *Providence Insurance Co., supra.* Such a clause giving the carrier the benefit of insurance effected by the shipper is valid "because the carrier might himself have insured against the loss, even though occasioned by his own negligence, and if a shipper under a bill of lading containing this provision effects insurance and is paid the full amount of his loss, neither he nor the insurer can recover against the carrier." *Luckenbach* v. *McCahan Sugar Co.,* 248 U. S. 139, 146. Following the same reasoning, we have said that "If a valid claim by the underwriter to be subrogated to the rights of the owner will not arise where the carrier has contracted with the owner that he, the carrier, shall have the benefit of any insurance, it would seem to be clear that where the carrier is actually and in terms the party insured, the underwriter can have no right to recover over against the carrier, even if the amount of the policy has been paid by the insurance company to the owner on the order of the carrier." *Wager* v.

*Providence Insurance Co., supra,* pp. 108, 109. See, also, *The John Russell,* 68 F. (2d) 901, 902.

Construing the policies in this instance as indemnifying the carrier against the liability which it had assumed by its bills of lading and tariffs to the cargo owners, the payments by the underwriters operated as a discharge of their obligation to the carrier, and while, as the cargo owners had the benefit of the insurance, the underwriters could be subrogated to the right of the cargo owners against the "King," they could not use that right to recover over against the carrier in defiance of their own stipulation. They could recover against the "King" the moiety for which the "King" was liable but could not recover against the petitioner. The procedure in admiralty did not affect the substantive rights established by the policies.

The decree of the Circuit Court of Appeals is reversed and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed.*