### FIDELITY & DEPOSIT CO. OF MARYLAND v. FRIEDLANDER.

### PHŒNIX INDEMNITY CO. v. SAME.
### Nos. 7635, 7636.

Circuit Court of Appeals, Sixth Circuit.
Jan. 13, 1939.

Grover N. McCormick and T. A. Evans, both of Memphis, Tenn. (Grover N. Mc-

Cormick and Evans, Evans & Creson, all of Memphis, Tenn., on the brief), for appellants.

W. B. Rosenfield, of Memphis, Tenn., for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

S. Friedlander, under the trade name of Friedlander Finance Company, operated a small jewelry store at 77½ South Main Street in Memphis. A robbery occurred in the store on the morning of October 5, 1935, and appellee brought separate suits against appellants, Fidelity and Deposit Company of Maryland and Phoenix Indemnity Company, to recover losses under their policies of insurance.

The cases were tried together and the court granted a motion for a directed verdict against each company after denying a similar motion made by them. The sole question is one of construction and involves the meaning of the word "employee" as used in Sec. (f) of Item 9 of the policy of the Fidelity and Deposit Company, and the word "employees" as used in No. 11 of the "Declarations" in the policy of the Phoenix Indemnity Company. We quote these provisions:

"Section (f). On property specified in Item 8, from within the premises, while a custodian and at least *one other employee of the Assured are on duty therein.*" (Italics ours.)

"There will be *one or more employees* (state number) or members or officers of the firm *on duty inside the premises* in addition to the custodian at all times this policy is in force." (Italics ours.)

The store carried between twenty and twenty-five thousand dollars worth of jewelry. It was a small place with a frontage of eight feet. Friedlander testified that there were regularly employed therein two persons, who devoted their entire time to it, to-wit, William Roescher, the Manager, who as a rule arrived between 7 and 7:30 in the morning, and Miss Felsenthal, Friedlander's granddaughter, who came on duty between 8:30 and 9. Each stayed until closing time, around 5:30 in the afternoon. Friedlander and his son-in-law, Felsenthal, visited the store nearly every day "to see how things were getting along" and would stay from half an hour to an hour. The only other person who did any work at the store was H. H. Peterson, who performed its janitor service; and the question is whether his status was that of an "employee" while he was so occupied, in the sense that the term was used in the clauses quoted from the policies.

Peterson worked for Ed Foley, who operated the Bluff City Window Cleaning Company, and had been with him seven or eight years. Foley had forty or fifty agreements for window cleaning service on Main Street and in addition furnished janitor service, under contract, to the Kaufman Hat Store, two doors from the jewelry store. In August, 1935, Foley and Friedlander entered into an oral contract, at an agreed compensation of $7 per month to supply the jewelry store with window service on the outside every morning and once a week on the inside, to sweep the floor three mornings a week and to mop it the other three, to wipe off the counters, show windows and fixtures, to clean the cuspidors and lavatories, and to wipe off and clean the light fixtures once or twice a month.

Peterson, in the performance of these duties, went to the store each morning between 8 and 8:30 and finished before it opened for business. Foley's instructions to him were to do the work he had contracted with Friedlander to do, but that if Roescher asked him to do anything else in connection with the cleaning to do it also. Both Foley and Roescher testified that neither Friedlander nor Roescher had the right to direct or control Peterson in the manner, means or details of how he was to do the work. Friedlander had nothing to do with the selection of the employee who was to do the work. Foley could have sent any one of his employees and apparently chose Peterson because he was already doing the work at the nearby Kaufman Hat Store. Peterson used the tools of the store until they were worn out and thereafter used those of the Cleaning Company. He kept a set at its office, consisting of chamois skins, rags, squeezers, buckets, ladders, etc. and also had some tools at the Hat Store. He reported each morning about six to the office of the Cleaning Company and received his orders and checked out. He finished his regular assignments about 9 A. M., after which, if he had not been given special orders, he reported back to the Cleaning Company. Foley paid Peterson's salary and he alone had the right to discharge him.

Peterson had no key, but, ordinarily, upon his arrival, was admitted by Roescher. On the morning of the robbery, when Peterson arrived, he rattled the door and Roescher, who was engaged in putting diamonds in the show window, reached over and unlocked the door. Peterson entered and was in the act of closing the door, having it almost shut, when two men, one carrying a satchel under his arm, approached, pushed the door open and entered. When the men entered Peterson stepped aside, thinking that they were other employees of Friedlander or Friedlander himself and took four or five steps away from the door. When he looked around one of the men was covering him with a pistol and the other had covered Roescher. The men took them to a lavatory in the back of the store and tied their hands. One of the robbers stayed with them while the other robbed the store of its diamonds and jewelry. The intruders left, slamming the door; Peterson got his hands loose and then untied Roescher. The police were notified but the robbers were never apprehended.

Was Peterson an employee of Friedlander within the meaning of the quoted policy provisions? The District Court held that he was.

█ It is well recognized that there is a moral risk involved in the insurance of merchandise against robbery. Vance on Insurance, page 925, Sec. 279 and cases cited. This is particularly true where the merchandise consists largely of small and valuable articles such as diamonds and jewelry. We think that the provisions in question were designed to reduce this hazard, i. e., the opportunity of defrauding the insurer. With one other employee, in addition to the custodian, on duty in the store there is less likelihood of a feigned or pretended robbery, for both the custodian and the employee have an opportunity to see and know what is taking place, and naturally one is a check against the other. Peterson's presence was a substantial compliance with the quoted provisions if he was an "employee" of Friedlander.

█ The term "employee" has different shades of meaning in different relationships. We need not recount them all. We are not permitted arbitrarily to choose between them. Where, in an insurance policy, a term is open to two or more constructions we are required to adopt that one more favorable to the insured. Aschenbrenner v. U. S. F. & G. Co., 292 U.S. 80, 85, 54 S.Ct. 590, 78 L.Ed. 1137; Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 322, 48 S.Ct. 512, 72 L.Ed. 895; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; Hahn v. Home Life Ins. Co., 169 Tenn. 232, 236, 84 S.W.2d 361. This is a just rule because insurance policies are written by the insurers. Thompson v. Phenix Ins. Co., 136 U.S. 287, 297, 10 S.Ct. 1019, 34 L.Ed. 408. "Employee" may mean any one who renders services to another. 1 Bouv. Law Dict., Rawle's Third Rev., p. 1035. It is no doubt frequently thought of in this sense when the word is used in common parlance. In Watson v. Watson Mfg. Co., 30 N.J.Eq. 588, 590, the Vice Chancellor said,—"The word 'employe' properly describes any one who renders labor or service to another * * *."

█ Aside from the inquiry as to who hired or paid Peterson, or had the right to supervise his duties or discharge him, it is nevertheless true that in a very real sense he was employed in Friedlander's work. The discharge of his duties was essential to the conduct of Friedlander's business. He was an ordinary janitor and the routine nature of his work was exactly the same as if he had been answerable directly to Friedlander. See Fox v. Fafnir Bearing Co., 107 Conn. 189, 139 A. 778, 58 A.L.R. 861, 864. We think it permissible to say that in the sense of the controverted provisions of the policies Peterson was an employee of Friedlander and this interpretation will satisfy the evident purpose of the provisions. See Great Lakes Transit Corp. v. Interstate S. S. Co., 301 U.S. 646, 653, 57 S.Ct. 915, 81 L.Ed. 1318.

Appellants contend that Peterson was an "employee" of Foley, an independent contractor. However, it is clear enough that the terms "employee" or "employees" used in the insurance contracts between appellants and appellee were not intended to be given any such technical meaning. See Aschenbrenner v. U. S. F. & G. Co., supra, page 85, 54 S.Ct. 590.

The judgment is affirmed.