NATIONAL BANK OF BURLINGTON v. FIDELITY & CASUALTY CO. OF NEW YORK.

No. 4877.

Circuit Court of Appeals, Fourth Circuit.

Feb. 12, 1942.

E. S. W. Dameron, of Burlington, N. C. (Claiborne Young, of Burlington, N. C., on the brief), for appellant.

Armistead W. Sapp, of Greensboro, N. C. (Oscar L. Sapp and J. O. Atkinson, Jr., both of Greensboro, N. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a directed verdict for defendant-appellee in a civil action brought by plaintiff-appellant for the recovery of $7,797.58, with interest, under the terms of a Bankers' Blanket Indemnity Bond executed and delivered by defendant to the plaintiff bank on November 1, 1936.

By the terms of this bond the defendant agreed to indemnify the plaintiff against any direct loss sustained by plaintiff, while the bond was in force, of any money or securities, in which the plaintiff had a pecuniary interest in an amount not exceeding $50,000, through any dishonest act of any of the employees of the plaintiff.

In February, 1937, the plaintiff bank lent to the Home Fertilizer and Chemical Company, of which one W. P. Crenshaw was President, the sum of $6,000. Further loans were made by plaintiff to this Company until the aggregate amount of these loans reached the sum of $21,900 on September 7, 1937. Of this amount, $15,900 was secured on notes executed by debtors of the Fertilizer Company in favor of that Company. These notes of the Fertilizer Company were indorsed in its name by W. P. Crenshaw as President, and were further indorsed by W. P. Crenshaw individually.

In the latter part of 1937, while the Fertilizer Company's notes to the Bank remained unpaid, the plaintiff Bank, at the request of Crenshaw, agreed to turn over to Crenshaw for collection the notes in favor of the Fertilizer Company which had been deposited with the Bank as collateral security for the indebtedness of the Fertilizer Company to the Bank, with the understanding that if the Fertilizer Company should repay in full its indebtedness to the Bank before December 31, 1937, the Bank would again finance the Fertilizer Company on the same basis in 1938. Apparently, it was thought that Crenshaw was in a better position than the Bank to collect these notes, since he knew all the makers of the notes personally. Not only would this provident arrangement expedite collection of the notes and save the Bank any possible collection fees and trouble but it would also enable Crenshaw to keep in close contact with the customers of the Fertilizer Company and perhaps cultivate future business. While the agreement was, therefore, advantageous for the Bank, in some respects, it was nevertheless conceived and instigated by Crenshaw, and the Fertilizer Company would reap the main and moving benefit.

Receipts were taken from Crenshaw when the various collateral notes were turned over to him on his promise to remit promptly to the Bank as soon as he received payment of, or made any collections on, the notes. Crenshaw started immediately to make collections and duly refunded $13,854.78 to the Bank in accordance with his agreement. However, he collected on the notes, and then failed to account for $7,797.58, whereupon this action was instituted by plaintiff against defendant on the Bankers' Blanket Indemnity Bond.

When much redundant verbiage in the bond is cast aside, the pertinent clauses provide that the plaintiff Bank is insured "against the direct loss * * * (a) Through any dishonest act, wherever committed, of any of the employees, as defined in § 6 hereof, whether acting alone or in collusion with others." Section 6 defines employees: "* * * To mean officers, clerks, and other persons in the immediate employ of the insured during the currency of this bond at its office or offices covered hereunder."

The defendant strenuously denied that Crenshaw was at the time of the collections and of the ensuing loss, an employee of the Bank within the meaning of the indemnity bond. This is the only issue involved in this appeal and the issue was submitted in the court below to the jury in the following language: "Was W. P. Crenshaw an employee of The National Bank of Burlington within the meaning of the bond offered in evidence as Exhibit A, as alleged in the complaint?"

Upon motion of attorneys for the defendant for a directed verdict on this issue, the court directed the jury to answer the issue: "No."

From the judgment entered in favor of the defendant upon this verdict, the plaintiff has duly appealed to this court.

▇▇ The plaintiff's brief is studded with numerous definitions, in varying terms, of the word "employee". We have carefully examined each of the situations cited and find that to accept and apply plaintiff's quotations to the bond in question apart from the context in which they were used is to torture the very meaning of what constitutes an employee in any given case. Two very recent decisions forcefully illustrate the danger in divorcing a definition from its facts, especially since the term "employee" has different shades of meaning in different relationships.

In United States v. Griswold, 124 F.2d 599, decided December 19, 1941, the First Circuit Court of Appeals held that a trustee of a Massachusetts Business Trust is not an employee of the trust under § 901 of the Social Security Act, 42 U.S.C.A § 1101. The court stated, at page 601 of 124 F.2d: "The relationship of employer and employee in the ordinary sense does not exist here. These trustees render services and receive compensation, but we do not feel that they are subject to such supervision and control as to make them employees within the scope of the congressional intent. * * * Here the plaintiffs are not subject to control in the management of the property by those for whose benefit they are required to act. They are not employees within the meaning of the Act. * * * We are not holding that no trustee is an employee. We are merely holding that these plaintiffs are not employees. Of course, there may be a case where a trustee is subject to such control that he would be an employee within the meaning of the Act."

On the other hand, the Tenth Circuit Court of Appeals held in Nicholas v. Richlow Mfg. Co., 126 F.2d 16, decided December 17, 1941, that the secretary of a corporation receiving no remuneration whatever for performing duties required of the office by State laws and by order of the Board of Directors, is an employee of the corporation for federal employment tax purposes. Said the court: "The fact that the secretary is not an employee under the Colorado Unemployment Compensation Act is not controlling. The tax liability must be determined from the provisions of the Federal Act."

It must, therefore, be borne in mind that the word "employee" is used to designate individuals in a number of situations, e.g., those entitled to compensation; those covered by the Wage and Hour Act; those covered by group insurance, and a host of others. In some classes the term is governed by the applicable statute while in others, such as the instant case, the contract which embodies the respective intents of the parties is controlling.

In "Words and Phrases", we find, in some one hundred sixty closely printed pages, head-notes of more than a thousand cases, in which the courts have dealt with the meaning of the term "employee". These, for our purposes, afford very scant assistance. For, as has been well said by the Supreme Court of Washington: "'Employee' * * * has * * * neither technically nor in general use, a restricted meaning by which any particular employment or service is indicated, and that it may have different meanings in different connections. The context and the connection in which it is used must largely

determine whether in a particular case the term includes a certain person." Empey v. Yost, 182 Wash. 17, 44 P.2d 774, 775.

Before we consider the authorities further, several salient factors in the case before us should be noted. On August 20, 1937, the defendant wrote to its local agent handling the bond in question: "The blanket bond provides protection on all officers and employees from the President down to the janitor, *who are actively engaged in the bank's business and are compensated by a salary.*" (Italics ours.)

On September 1, 1937, the defendant again wrote to its local agent, stating that a notification to it was not necessary insofar as coverage of new employees was concerned.

Plaintiff contends that Crenshaw entered its employ on October 1, 1937. Yet on October 26, 1937, plaintiff wrote a letter to defendant's local agent, giving a list of employees at the end of the term of the bond for the purpose of the computation of the amount of the premium on the renewal bond. This list included some employees who were not on the regular payroll of the Bank, such as two daughters of the janitor who did relief work. *Yet the list failed to include Crenshaw as an employee.* We are not to conjecture on the possible inadvertent nature of this omission. Nor does the fact that the Bank was acting gratuitously in supplying a list militate against the damaging effect of the list as reported. Finally, in a reply letter dated October 28, 1937, from the defendant to its local agent, an inquiry was made as to whether the janitor's daughters were on the regular payroll of the bank: "If so, we are going to charge for them as additional employees, and if they are not on the regular payroll of the bank, of course they are not included in the coverage extended by the blanket bond."

It would, therefore, seem clear that the parties to the contract did not consider Crenshaw an employee within the purview of the bond. He was rather, for the collection of these notes, in the nature of an agent, independent in the manner and method of his collection and subject to the control of the plaintiff Bank only insofar as he was liable for a prompt remittance to the Bank of any payments made on these notes. Crenshaw, however, did make rather frequent visits to the Bank to report on his success, or lack of it, in collecting the notes in question.

■ In section 235 on page 319, Restatement of the Law of Contracts, Rules Aiding Application of Standards of Interpretation (of contracts) are given. Rule (e) states: "If the conduct of the parties subsequent to a manifestation of intention indicates that all the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach to it the manifestation."

■ This rule has often been applied in North Carolina: "It is well settled that where the contract is not ambiguous, the construction is a matter of law for the courts to determine. *Courts will generally adopt a party's construction of a contract. Attendant circumstances, party's relation, and object in view should be considered, if necessary, in interpreting a written contract.*" (Italics ours.) Belk's Dept. Store v. George Washington Fire Insurance Co., 1935, 208 N.C. 267, 180 S.E. 63, 65.

See, also, Hood v. Davidson, 1934, 207 N.C. 329, 177 S.E. 5; Albert Pick & Company v. Morehead Bluffs Hotel Co., 1929, 197 N.C. 110, 147 S.E. 819.

■ We are not unmindful of plaintiff's admonition that when a term of an insurance policy is open to two or more reasonable constructions, we are required to adopt that one more favorable to the insured, Aschenbrenner v. United States F. & G. Co., 1934, 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137. With this thought in mind we have particularly analyzed Fidelity & Deposit Company of Maryland v. Friedlander, 6 Cir., 1939, 101 F.2d 106, possibly the strongest case in favor of the contention of appellant. A head-note to that case reads: "Where operator of window cleaning company contracted to furnish janitor service to jewelry store, and instructed his employee to do the work and perform any other services requested by manager of jewelry store, but owner and manager of jewelry store had no right to direct or control such employee, such employee was nevertheless an 'employee' of the jewelry store within terms of policy insuring against robbery, which required presence of custodian and at least one other employee at time of robbery."

But there, the court was interpreting the term "employee" not under the cov-

erage of the insurance policy but in a restrictive condition that conditioned the operation of the policy insuring against robbery. Such conditions are, and should be construed very strictly against the insurance company. And though the janitor was hired and paid by the window cleaning company rather than by the insured, yet "the routine nature of his work was exactly the same as if he had been answerable directly to Friedlander" (the insured), 101 F.2d at page 108. We think, accordingly, that these factors clearly distinguish that case from the instant case. While Crenshaw might be deemed an employee in some qualified sense of that term, he cannot be fairly treated as an employee within the coverage of defendant's indemnity policy. Nor is it necessary for us at this time to describe with legal exactness the precise nature of Crenshaw's relationship to the Bank. Cf. Mangum v. Mutual Grain Co., 1922, 184 N.C. 181, 114 S.E. 2; Holleman v. Taylor and Rawls-Dickson Candy Co., 1931, 200 N.C. 618, 158 S.E. 88.

Plaintiff laid great stress on the fact that the policy in question is on its face designated as a blanket policy. The expression "blanket policy" is a term of art in the field of insurance. It appears to be most frequently used in connection with fire insurance policies and has acquired a rather precise connotation. A blanket policy is said to be one which contemplates that the risk is shifting, fluctuating or varying, and is applied to a class of property rather than to any particular risk or thing. Cf. Home Insurance Co. v. Baltimore Warehouse Co., 1876, 93 U.S. 527, 541, 23 L.Ed. 868. A compound or blanket policy invariably covers and attaches to every item of property described in the policy and insures the property collectively, without providing in the event of loss for a distribution of the insurance to each item. Wilson Co. v. Hartford Fire Insurance Co., 1923, 300 Mo. 1, 254 S.W. 266, 281.

See, also, Johnston v. Phelps County, etc., Insurance Co., 1905, 73 Neb. 50, 102 N.W. 72, 73; American Central Ins. Co. v. Landau, 1901, 62 N.J.Eq. 73, 49 A. 738, 750. What is said in these cases is applicable here, if for the term "property" we substitute the word "persons". Thus, the expression "blanket policy" does not extend the coverage of the policy beyond the reasonable ambit of the protection that is paid for and desired.

Finally, there is the touch-stone of that mythical, but sometimes useful, "man of the street". We are firmly convinced that such a person, endowed with common sense but unlettered in the law, would never, under the circumstances and for the purposes of the instant case, consider Crenshaw as an employee of the Bank.

We affirm the judgment of the District Court.

Affirmed.