**CONTINENTAL DISTRIBUTING CO., Inc.
v. READING CO.**

**No. 9482.**

Circuit Court of Appeals, Third Circuit.

Argued Feb. 19, 1948.

Decided May 6, 1948.

As Amended on Denial of Rehearing
July 7, 1948.

---

Thomas Raeburn White, of Philadelphia, Pa. (W. Wilson White and White & Williams, all of Philadelphia, Pa., on the brief), for appellant.

George E. Beechwood, of Philadelphia, Pa. (Charles L. Ford, Conlen, La Brum & Beechwood, all of Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, O'CONNELL, and KALODNER, Circuit Judges.

O'CONNELL, Circuit Judge.

Plaintiff, the owner and shipper of 200 pipes of wine from Portugal to Chicago, Illinois, herein seeks damages for loss of a portion of the shipment by defendant, a railroad common carrier, between the time when defendant accepted shipment of the pipes in Philadelphia and that of delivery in Chicago. The jury returned a verdict in favor of plaintiff in the amount of $8890.92, without interest.[1] Appealing from the judgment entered upon the verdict, defendant asserts three alleged grounds for reversal: (1) That "plaintiff has been

---

[1] Whether or not interest should be granted is not here in question.

paid the full amount of its loss by an insurance company," and that "defendant is entitled to the benefit of such insurance"; (2) that "the verdict was in excess of plaintiff's full, actual loss disclosed by the only competent evidence thereof"; and (3) that the charge of the court contained prejudicial error. Bearing in mind that the jury verdict requires the resolving of all doubtful issues of fact in favor of plaintiff, we shall consider each of these three questions.

A. The effect of the insurance.

■ At an early point in the trial, counsel for plaintiff in eliciting from one of his witnesses testimony concerning various items of damage, asked what insurance premium plaintiff had paid, apparently on the theory that such premium was a recoverable expense. On cross-examination of this witness, over plaintiff's strenuous objections, defendant adduced testimony indicating that plaintiff had received from the insurance company the sum of $14,536.52. The receipt covering this sum given the insurance company by plaintiff was introduced in evidence with the express consent of defendant's counsel, although the insurance policy itself was not. The receipt stated on its face that the money was a repayable loan. In side bar conference, defendant's counsel stated that it was a question of fact for the jury to decide whether the money given plaintiff by the insurance company was a loan or a payment.

It is now the contention of defendant that, since the bill of lading which defendant issued to plaintiff gave defendant the full benefit of any insurance effected by plaintiff; and since there was no evidence that the insurance policy contained a provision inconsistent with the aforementioned benefit section of the bill of lading; the money received by plaintiff must be deemed an insurance payment.

We shall assume arguendo that the court was justified in permitting the testimony concerning the receipt of this money to be adduced; and we shall assume further that

the benefit section of the bill of lading was valid. See Luckenbach v. McCahan Sugar Co., 1918, 248 U.S. 139, 146, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522. But see China Fire Ins. Co. v. Davis, 2 Cir., 1931, 50 F. 2d 389, 391, 392, 76 A.L.R. 1259, certiorari denied sub nom. Mellon v. China Fire Ins. Co., 1931, 284 U.S. 658, 52 S.Ct. 36, 76 L.Ed. 558. An insurmountable difficulty nevertheless confronts defendant. The policy under which the shipper was insured not having been produced in evidence, we are consequently at a loss to know the exact provision of coverage. Defendant, with the power to take steps to compel production of the policy itself, chose instead to urge the jury on the basis of the oral testimony and receipt to find the transaction to be an insurance payment. The jury must be construed as having decided that what plaintiff received was a repayable loan, and not an insurance payment. The Luckenbach case squarely holds valid the kind of arrangement which plaintiff asserted and the jury here found to be the intention of the parties to the transaction.[2] On the basis of the record before us, we cannot say as a matter of law that the intention of the parties was otherwise.

B. The amount of loss sustained by plaintiff.

■ In view of the finding that defendant could not claim the benefit of the agreement between plaintiff and the insurance company, it becomes important to determine the extent of the liability of defendant. Apart from some testimony indicating both that the pipes were proper containers for shipment of the wine at the time when the instant cause of action arose, and that the pipes had been subjected to rough handling, the trial was principally devoted to sharp controversy over the gallonage lost by defendant and the value per gallon of the wine. At the conclusion of the trial, the court permitted each of the litigants to submit to the jury a calculation of the amount of damages. Since the jury verdict was in the precise amount claimed by

---

[2] The Luckenbach case was quoted with approval in Great Lakes Corp. v. S. S. Co., 1937, 301 U.S. 646, 57 S.Ct. 915, 81 L.Ed. 1318, a case upon which defendant has placed great reliance. See also V. Ri-
vera S. en C. v. Texas & N. O. R. Co., 1947, 211 La. 969, 31 So.2d 180, 172 A.L. R. 791, and Dixey v. Federal Compress & Warehouse Co., 8 Cir., 1942, 132 F.2d 275, 278.

plaintiff, $8890.92, it is evident that the computations submitted by plaintiff were accepted in toto. Accordingly, we direct our analysis to these computations.

(1) The gallonage.

For each of the 200 pipes, plaintiff listed the net weight in kilograms, the number of liters, the amount shipped in gallons, the number of gallons received, and the leakage. For example, the first three pipes were treated as follows:

| Pipe No. | Net Wt. Kg. | Litres | Gal. Shipped | Gal. Received | Leakage |
|---|---|---|---|---|---|
| 1 | 541 | 530 | 140 | 139.0 | 1.0 |
| 2 | 545 | 534 | 141 | 129.5 | 11.5 |
| 3 | 538 | 527 | 139 | 137.0 | 2.0 |

The evidence discloses a sound basis for the figures in the "net weight kg." column, in that the "Note of Gauges" of the Portuguese vendor was introduced, and the net weight figures on that document correspond with those used in plaintiff's computation. The basis for plaintiff's liter column, however, seems to be arbitrary; for, although the net weight of the pipes ranged from 525 to 551 kilograms, in 197 out of the 200 instances plaintiff subtracted the figure of 11 and asserted that the remainder was the volume of liters in the pipe.[3] In the absence of testimony explaining why the volume of liters should almost invariably result in eleven less than the weight in kilograms, we think the jury had no proper foundation for accepting plaintiff's figure of how many liters were shipped from Portugal, particularly when plaintiff's total of 106,031 liters is 30 liters greater than the total given on the note of gauges of the Portuguese vendor, which document plaintiff introduced in evidence.

█ Apparently plaintiff computed the gallonage per pipe by dividing the number of liters in each pipe by 3.785. The result, however, was set down only in full gallons, although the "gallons received" column shows the volume in tenths of gallons as well. The 28012 "gallons shipped" total

at which plaintiff arrived, therefore, is really only an estimate rather than an exact figure. Since the jury was told only that those figures were mathematically correct and cautioned that defendant did not agree with the theory of the computations, we think that the failure of plaintiff at least to set a foundation in the evidence for the consideration of those computations deprived the jury of a rational basis for acceptance of figures which under our analysis not only lack accuracy but also show inconsistency with plaintiff's other evidence.

█ At this point, it is necessary for us to consider the instructions given the jury concerning the computations. The pertinant portion of the court charge reads as follows: "When it [the consignment] got to Chicago, additional damage was done in the amount that has been described by these witnesses, and it is for that amount of damage the complainant says was inflicted on his merchandise between Philadelphia and Chicago that he claims damage for it, and he has given you a set of figures which he is asking you to consider in substantiation of his theory as to the amount of damage that he has sustained. The defendant, Mr. White, has given you certain figures which he and his associate claims should be considered by you in justification of his theory as to what damages, if any, should be awarded." Although other portions of the charge do remind the jury of such possibilities as loss by seepage, we find no comment which clearly pointed out that the jury was not obliged to accept either of the computations submitted by counsel. It is not unlikely that the jury, believing the figures presented by plaintiff to reflect more nearly the actual loss be-

---

[3] The three exceptions were on pipes designated as 93, 119, and 120 by plaintiff. Their net weights were 525, 542, and 542 kg., respectively. In these three instances, the liter volume was a figure 10 less than the number of kilograms. The figure 11 was subtracted from 24 other pipes with a net weight of 542 kilograms.

tween Philadelphia and Chicago, thought it necessary to return a verdict in exact accord with that computation, rather than a verdict for some third figure. Even though neither litigant asked the court to instruct the jury that choice between the two submitted figures was not necessary, we believe that under the circumstances it was error on the part of the court to permit the jury to consider those figures without an adequate evidentiary foundation and without clear indication that neither result suggested by the litigants was binding.

■ In passing, it might be noted that the computations of defendant are subject to a similar infirmity. Defendant on this appeal has taken the position that the only competent evidence of the gallonage lost between Philadelphia and Chicago was that supplied by defendant in weighing the shipment at Philadelphia. In examining defendant's computation, however, we note that defendant's result, a maximum shortage of 1907 gallons between Philadelphia and Chicago, depends in part upon the assertion that one gallon of the wine weighed 8.5 pounds. The record is devoid of testimony establishing that figure. In fact, the warehouse manager of the Portuguese vendor stated that he did not know the weight per gallon, and further deposed that the specific gravity at 15 degrees Centigrade varied between 0.995 and 1.060, dependent upon the sugar content. Moreover, defendant's computation deducts 1000 pounds for dunnage, although the figure was concededly an estimate and although the testimony is far from clear that the gross weight of each of the five freight cars was taken after the dunnage was placed in those cars. Furthermore, if defendant itself is not bound by the weights recorded on the bills of lading, as is apparent from such cases as Chicago & N. W. Ry. Co. v. Bewsher, 8 Cir., 1925, 6 F.2d 947, 952, certiorari denied 1926, 270 U.S. 641, 46 S.Ct. 205, 70 L.Ed. 775, and Strohmeyer & Arpe Co. v. American Line S. S. Corp., 2 Cir., 1938, 97 F.2d 360, by the same token we should be reluctant to hold that a shipper of goods would be so bound by such notations, if he produced sufficient evidence to show that the carrier in fact carried a greater quantity than that recorded on the bills of lading.[4]

(2) The value.

■ Analysis of the testimony supporting the jury verdict as to the value of the wine per gallon likewise reveals serious defects. Plaintiff's computation records the "sound arrived value at Chicago as of July 1944 as reported by Marco Importing Co." to be $3.98 per gallon. As we have previously indicated, the jury obviously accepted all figures used by plaintiff. The sole witness to testify to that value, however, was a marine surveyor who explained that the $3.98 sum consisted of $1.93 (alleged sale price of 50 pipes in New York), plus 20 cents (estimated freight charge to Chicago), plus $1.25 (duty), plus 60 cents (tax).[5] The witness admitted that he was not familiar with the actual sales price of the wine, and that his information on the price in New York had been given him by a third person. Each of the components of the $3.98 total warrants examination.

In Illinois Cent. R. Co. v. Crail, 1930, 281 U.S. 57, 50 S.Ct. 180, 74 L.Ed. 699, the Supreme Court held that, absent special circumstances, a shipper is normally entitled to recover, as his "actual loss," the wholesale price to him of the commodity lost by the carrier, and not the retail price. By this standard, each gallon of the wine cost plaintiff approximately $1.73 at Philadelphia (the 28,000 gallons were $48,458.92); and testimony attempting to establish a different figure would be inappropriate unless either litigant could show that the actual loss to plaintiff was greater or less (e. g., necessity of immediate replacement of the lost wine by purchase at

---

[4] "The rule that a bill of lading is not conclusive as a receipt, also applies if more freight is actually loaded than is called for by the bill of lading. The facts may be shown and the same liability attaches to the carrier as would attach if a bill of lading had been issued to cover." Hotchkiss, Bills of Lading, page 16.

[5] It is noted that plaintiff's computation as submitted to the jury made no claim for the cost of recoopering, although evidence of such cost had previously been introduced.

retail, or a subsequent depreciation in value).[6]

The estimate of 20 cents per gallon freight to Chicago was indisputably inaccurate. The total inland freight bill, including federal tax, was $1846.96; at 20 cents per gallon, this would mean that the railroad had carried only 9235 gallons (5 x 1846.96); but both litigants agree that 24,578.1 gallons, or almost three times as much, were delivered in Chicago. It is interesting to note that, in the claim made by plaintiff to the delivering rail carrier, plaintiff recorded the inland freight as being 6½ cents per gallon. Since the interstate freight rate for the transportation of wine is set by the government and is readily ascertainable, we can see no reason why the jury should have been presented instead with a grossly inaccurate estimate.

■ A witness for plaintiff testified that plaintiff had paid an internal revenue tax of 60 cents per gallon. The witness, however, did not say that the tax was paid on wine which plaintiff subsequently did not receive. Although documentary evidence of the amount of tax paid seems not to have been produced in evidence, there was testimony that the tax was claimed for only 23,596.4 gallons. Since plaintiff received in Chicago almost 1000 gallons more than that on which tax was assessed, it is clear that the jury should not have granted any tax recovery.

■ On the other hand, a customs duty of $1.25 per gallon was claimed and paid upon the entire shipment of 28,000 gallons, as is shown by the customs manifest. Moreover, the assistant collector of customs testified that there was some doubt whether the duty paid on the wine lost in transit would be refunded. Were the law not definite concerning the right of refund, such evidence would have justified the jury verdict awarding plaintiff $1.25 for each gallon lost by the rail carriers. It was held, however, in United States v. Somerset Importers, Ltd., 1946, 33 C.C.P.A., Customs, 138 C.A.D. 328, that when liquor under bond is shipped from a foreign port under an "Immediate Transportation" entry, duty is not payable upon liquor lost in transit from New York to San Francisco. Except for the fact that the shipment in the case at bar was transferred from a water carrier to a rail carrier, while in the Somerset Importers case the transfer was from one water carrier to another water carrier, the relevant facts of the cases are identical. The basis of the Somerset Importers decision is that the reloading of the liquor at New York did not terminate the act of importation, which continued until the liquor arrived at its destination. By the same token, therefore, the duty paid on the wine not delivered to Chicago would be refundable. If only in the interest of maintaining a uniform interpretation and application of the customs laws by following the decision of the court which is primarily charged with those functions, we are constrained to hold that the court below erred in the instant case in permitting the jury to consider the customs duty as an element of damages.

C. The charge of the court below.

Since the errors concerning the amount of damages to which plaintiff was entitled require reversal of the judgment of the court below and remand of the cause for further proceedings, it is unnecessary to discuss in detail defendant's present objections to the charge of the court below. Plaintiff being not here entitled to recovery from defendant of the duty paid, the court acted properly in affirming defendant's point for charge to that effect. We mention this only because that portion of the court charge was somewhat vague and was obviously misunderstod by the jury. The other items of which defendant complains are of minor nature and probably would not of themselves constitute reversible error.

For the reasons stated, the judgment of the district court will be reversed and the cause will be remanded for further proceedings in accordance with this opinion.

On Petition for Rehearing.

PER CURIAM.

Plaintiff, in this petition, advises for the first time that the figures listed in the "Gallons Shipped" column, reproduced in part in the opinion we filed in this case

---

[6] We express no opinion on whether or not the insurance premium paid by the plaintiff is a proper item of damages recoverable from defendant, the question not having been raised.

on May 6, 1948, (168 F.2d 970) were obtained by multiplying the figures in the "Net Weight Kilograms" column by .25878; and not by dividing the alleged number of liters in each pipe by 3.785.[1]

We wish to make clear that the basis of our holding as to the proof of gallonage lost was not, and is not, the fact that the computations of plaintiff arrived at a result slightly different from the documentary and other evidence. We were concerned that the jury was handed computations for which not only the jury, but this court as well, could find no adequate explanation in the testimony adduced. Furthermore, the absence of proper guidance by the court below, in failing to instruct the jury that it was unnecessary to accept either computation, compounded the error to the point that sets of figures without foundation in the evidence were permitted to submerge the testimony and documents elicited. We do not bar the submission of computations; but rather we hold that, when such are offered, they must comport with and be supported by proper evidence; and that it is the duty of the court to apprise the jury clearly that, in cases such as this, there is no peculiar sanctity attendant upon such computations which requires their acceptance or rejection in toto.

All other matters of which we may take cognizance being fully considered in the opinion previously rendered in this case, the petition for rehearing will be denied.

---

[1] Parenthetically we might add that this petition likewise does not disclose the source for the figures in the "Litres" column.