**EMPLOYERS MUT. LIABILITY INS. CO. OF WISCONSIN v. UNDERWRITERS AT LLOYD'S.**

Civ. A. No. 1924.

United States District Court
W. D. Wisconsin.

Sept. 15, 1948.

J. M. Sweitzer and Miles Lambert, both of Wausau, Wis., and Kenneth Grubb and Quarles, Spence & Quarles, all of Milwaukee, Wis., for plaintiff.

Maxwell H. Herriott and Lines, Spooner & Quarles, all of Milwaukee, Wis., and E. L. Wingert and Stroud, Stebbins & Wingert, all of Madison, Wis., for defendant.

STONE, District Judge.

The plaintiff has moved for a summary judgment on the pleadings and undisputed evidence. It is now and was at all times mentioned in the complaint, engaged in the general insurance business, and on June 22, 1941, issued a policy of insurance to Chesapeake Camp Corporation, of Franklin, Virginia, a manufacturer and distributor of paper.

That portion of the policy pertinent to the issues involved in this action reads as follows:

### "#11 Assumed Liability, Products Liability

"Coverage 'A' and 'B' shall include 'coverage for liability assumed by the insured under any contract or agreement in force at any time during the policy period, and also for liability arising out of the possession, employment, consumption, handling, or use of any merchandise or product manufactured, sold, handled or distributed by the insured.'"

By the terms of a re-insurance agreement described in the complaint, defendant agreed to re-insure the plaintiff in respect to all policies of insurance written by it covering "products liability". It further agreed to be bound by the definition of "products liability" as set forth in the policies issued by plaintiff, including the one involved in this proceeding.

Under said re-insurance agreement defendant agreed to indemnify plaintiff for its ultimate net loss beyond $2,500.00 resulting from damage to any one person arising out of "products liability", coverage up to $100,000.00, plus loss incurred for legal costs, adjustment and litigation of a claim against plaintiff arising out of products liability coverage of insurance under policies issued by plaintiff.

The policy issued by plaintiff to Chesapeake Camp Corporation was in force on May 13, 1943, and contained the aforesaid coverage provision as to "products liability". On said date, one John Gunick, who was then employed by the Gross Trucking Company of New York City to unload a freight car loaded with paper, was killed in the course of his employment when a roll of paper weighing approximately 500 pounds fell on him as he opened the door of the freight car in which the paper had been loaded by the employees of the Chesapeake Camp Corporation. His death was caused by the negligent loading of the paper by said employees, in that they failed to properly band and secure the roll of paper in the car.

On October 5, 1945, the Estate of John Gunick obtained judgment against the plaintiff's insured for the sum of $22,630.75, which judgment was on May 17, 1946, affirmed by the Appellate Court of New York. Plaintiff thereafter paid said judgment in the amount of $23,574.22, pursuant to its policy issued to Chesapeake Camp Corporation. Plaintiff also incurred and paid the sum of $5,127.10 as expenses for investigation, adjustment and litigation of said claim, and deducting the $2,500.00 excluded by the terms of the re-insurance agreement, leaves a total amount of $26,201.32 which it now seeks to recover from defendant with interest from the demand date, October 17, 1945.

Defendant's answer alleges that Gunick's death was caused by the negligent loading of the paper rolls by the Chesapeake Camp Corporation, prior to the sealing of the car for shipment, and denies liability on the basis of the re-insurance agreements which were in force and effect on the date of the death of the deceased.

The issue in this action must be determined from the wording of the policy issued by plaintiff, and its re-insurance agreement with defendant.

Defendant agreed to re-insure plaintiff in respect to all policies written by it covering "products liability" as defined in said policies (including such products liability as may be covered by blanket, comprehensive or so-called full coverage liability insurance policies). The policy issued by plaintiff to Chesapeake Camp Corporation defined "products liability" to include "coverage for liability assumed by the insured under any contract or agreement in force at any time during the policy period, and also for liability arising out of the possession, employment, consumption, handling, or use of any merchandise or product manufactured, sold, handled or distributed by the insured."

The defendant contends that its coverage does not include the handling of the paper by plaintiff's insured; that the handling must be by someone other than the insured; that it is not liable because there is no proof that Gunick, the deceased, handled the roll of paper at the time he sustained the fatal injury.

Plaintiff's policy issued to Chesapeake Camp Corporation expressly provides coverage for liability arising out of the possession, handling or use of any merchandise or product sold, handled, or distributed by the insured. The roll of paper was handled by the insured. As to that fact there is no dispute.

Defendant contends that the word "handle" as used in the policy means "trade in" or "dealt in", and that the Court should adopt that definition in construing the policy and re-insurance agreement.

The words "handling" and "handle" are used in the plaintiff's policy as follows: "For liability arising out of the possession, employment, consumption, handling, or use of any merchandise or product manufactured, sold, handled or distributed by the insured."

■ The language as used in that provision is clear and unambiguous. To construe the contract so as to exclude the first use of the word "handling" in this provision and adopt the definition of "handle" as "to trade in" or "dealt in", as urged by defendant, would be according to the word "handling" a technical interpretation, and not its plain, ordinary and usual meaning as defined by Webster's New International Dictionary: "To touch; to feel with the hand; or to hold, take up, move, or otherwise affect with the hand; to use the hands upon; as packages marked 'glass', must be handled with care."

■ Even if the language in said provision of the policy is capable of two meanings; if it is ambiguous, uncertain or of doubtful meaning, it must, under the rule of law proclaimed in a long unbroken line of decisions of the Supreme Court of the United States and the Supreme Court of Wisconsin, be construed most strongly against the insurer and most favorably to the insured, the plaintiff herein.

The language is that of the insurer and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it. Mutual Life Insurance Company of New York v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; Royal Insurance Company v. Martin, 192 U.S. 149, 24 S.Ct. 247, 48 L.Ed. 385; Great Lakes Transit Corp. v. Interstate S. S. Co., 301 U.S. 646, 57 S.Ct. 915, 81 L.Ed. 1318; Stroehmann v. Mutual Life Insurance Company, 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed 732; French v. Fidelity & Casualty Co., 135 Wis. 259, 115 N.W. 869, 17 L.R.A.,N.S., 1011; Charette v. Prudential Ins. Co., 202 Wis. 470, 232 N.W. 848; Garnsky v. Metropolitan Life Insurance Co., 232 Wis. 474, 287 N.W. 731, 124 A.L.R. 1489.

■ The defendant is bound by the definition of products as used in the policy issued to Chesapeake Camp Corporation by the plaintiff, and as so defined it included the negligent handling by the insured of the product that caused the death of John Gunick.

The plaintiff, Employers Mutual Liability Insurance Company of Wisconsin, discharged its obligation to its insured and it is now entitled to recover from defendant the amount so expended.

Plaintiff's motion for judgment as prayed for in the complaint is granted.