743 A.2d 362 (2000)
327 N.J.Super. 343
MITSUI O.S.K. LINES, LTD. and MOL Intermodal, Inc., Plaintiffs-Appellants,
v.
CONSOLIDATED RAIL CORPORATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 20, 1999.
Decided January 19, 2000.
Hill Rivkins & Hayden, for plaintiffs-appellants (Robert G. Clyne, Jersey City and James A. Saville, Jr., of counsel; Mr. Clyne, on the brief).
Ruprecht, Hart & Weeks, Millburn, for defendant-respondent (Michael R. Ricciardulli, of counsel and on the brief).
Before Judges BAIME, EICHEN and BILDER.
The opinion of the court was delivered by EICHEN, J.A.D.
Plaintiffs Mitsui O.S.K. Lines (Mitsui) and MOL Intermodal, Inc. (Intermodal) appeal from an order granting defendant Consolidated Rail Corporation's (Conrail) cross-motion for summary judgment dismissing their action for damages incurred following a derailment of a Conrail train, and denying their motion for summary judgment. The damages sought consist of the cost of hiring surveyors to inspect and survey the damaged cargo in the amount of $42,382. Conrail paid for the cargo losses but refused to pay for the survey *363 expenses, claiming that plaintiffs should have used Conrail's inspection team to conduct the surveys and that liability for such expenses is excluded under a limitation on damages provision in the parties' shipping contract.[1]
The contract was governed by Conrail's Exempt Trailvan Rules Circular CR No. 1 (Circular No. 1) which sets forth Conrail's liability for damage to cargo, and contains procedures for processing claims. Paragraph 8.7 of Circular No. 1, entitled "Special or Consequential Damages," contains a provision limiting Conrail's liability for damages, as follows:
In no event shall Conrail be liable for any special, consequential, indirect or punitive damages, interest or attorney's fees.
Conrail contended survey expenses are included within this limitation on damages provision. Plaintiffs countered that survey expenses are "incidental" damages which are different from "consequential" damages and not excluded by the provision.
In granting Conrail's cross-motion for summary judgment and denying plaintiffs' motion, the judge, in a brief conclusory oral decision, determined that the limitation on damages contained in paragraph 8.7 included survey expenses "by [its] literal reading" and also that such expenses were not recoverable because Conrail had made inspectors and surveyors available to plaintiffs as set forth in the Guide.
The principal issue on this appeal is whether survey expenses are "special, consequential, [or] indirect" damages or "incidental" damages. If they are "incidental" damages, then Conrail is liable to reimburse plaintiffs for the survey expenses they incurred because that term was not included in Conrail's limitation of damages provision; if not, then plaintiffs cannot recover these costs from Conrail.
By the clear implication of their arguments, both parties believe the limitation on damages provision in paragraph 8.7 is clear and unambiguous. Plaintiffs contend that survey expenses constitute "incidental" damages as a matter of law because "incidental damages" are damages directly associated with their obligation to mitigate their cargo losses. Conrail argues that survey expenses are "special," "indirect," or "consequential" damages, because they are the "natural and proximate consequence[s] of the [cargo] loss," or because they do "not follow immediately" after the loss.
We resolve the issue by applying general contract principles. Both plaintiffs and defendant agree that the contract requires the law of the Commonwealth of Pennsylvania to govern the interpretation of the disputed provision. Under Pennsylvania law, "`[t]he task of interpreting ... contract[s] is generally performed by a court rather than by a jury.'" Madison Constr. Co. v. Harleysville Mutual Ins. Co., 557 Pa. 595, 735 A.2d 100, 106 (1999) (citations omitted).
"When courts interpret a contractual agreement, their duty is to `ascertain the intent of the parties as manifested by the language of the written agreement.'" Glen-Gery Corp. v. Warfel Constr. Co., 734 A.2d 926, 929 (Pa.Super.1999) (quoting Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 469 A.2d 563, 566 (1983)). The intent of the parties is to "be ascertained from the document itself when its terms are clear and unambiguous." Hutchison v. Sunbeam Coal Corp., 513 Pa. 192, 519 A.2d 385, 390 (1986) (citing Steuart v. McChesney, 498 Pa. 45, 444 A.2d 659, 661 (1982)).
*364 The Comments to the Restatement of Contracts defines "incidental losses" as follows:
Incidental losses include costs incurred in a reasonable effort ... to avoid loss, as where a party pays brokerage fees in arranging or attempting to arrange a substitute transaction.
[Restatement (Second) of Contracts § 347 comment c (1981) (the Restatement).]
Pennsylvania's version of the Uniform Commercial Code (U.C.C.) defines "incidental damages" similarly as "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected...." 13 Pa.C.S.A. § 2715(a)(1).[2]
Comment c to § 347 of the Restatement defines "consequential" losses to include "injury to property resulting from defective performance." It also defines "special" and "consequential" damages as "[t]he damages recoverable for loss that results other than in the ordinary course of events...." Id. at § 351 comment b.
The U.C.C. defines "consequential" damages as:
(1) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
(2) injury to person or property proximately resulting from any breach of warranty.

[13 Pa.C.S.A. § 2715(b).]
In addition, under Pennsylvania law, consequential damages are frequently associated with damages in the form of lost profits. See e.g., AM/PM Franchise Assoc. v. Atlantic Richfield Co., 526 Pa. 110, 584 A.2d 915, 920 (1990).
We have carefully considered these definitions, the record, and the arguments advanced by the parties, in the light of the applicable law, and agree with plaintiffs that survey expenses are "incidental" damages arising from the derailment of the Conrail train, and not "consequential, special [or] indirect damages" as limited in the parties' contract.
Basically, survey expenses are "inspection" expenses. See 13 Pa.C.S.A. § 2715(a)(1). This type of expense flows directly from the ordinary course of events following a train derailment involving serious cargo loss. Survey expenses are substantially equivalent to the cover costs incurred by a buyer rejecting defective goods because they are expenses incurred in an attempt to mitigate damages. They do not properly fit within the definition of "consequential" or "special" damages because they are not damages which result "other than in the ordinary course of events." Restatement, supra, § 351 comment b.
Indeed, it has been recognized that survey fees are "necessary expenses incidental to the [cargo] loss [sustained]." GTS Industries S.A. v. S/S Havtjeld, 887 F.Supp. 531, 538 (S.D.N.Y.1994) (emphasis added), aff'd, 68 F.3d 1531 (2d Cir.1995). They are fees incurred to determine the quantum of damage or to render expert assistance in restoration or salvage. Santiago v. Sea-Land Service, Inc., 366 F.Supp. 1309, 1317 (D.P.R.1973) (citing Continental Distrib. Co. v. Reading Co., 168 F.2d 967 (3d Cir.1948)). Similar expenses which are considered "incidental" to a cargo loss include transportation, warehousing, and the like. Ibid.
In sum, Circular No. 1, the controlling agreement between the parties, and in particular paragraph 8.7, limits Conrail's *365 liability for "consequential, special, [or] indirect" damages. That provision does not expressly reference "incidental" damages. Since survey costs are "incidental" damages, a term not expressly included in the provision, liability therefor is not limited under the provision. If Conrail, a sophisticated business entity, wanted to limit its liability for "incidental" damages, it should have included that term in the list of damages it sought to circumscribe. See e.g., New York State Electric & Gas Corp. v. Westinghouse Electric Corp., 387 Pa.Super. 537, 564 A.2d 919 (1989). It failed to do so and, accordingly, Conrail is liable for reimbursing plaintiffs for that loss.
We reject as without merit Conrail's claim that the course of dealing between the parties demonstrates that survey expenses were limited by paragraph 8.7 or that plaintiffs were required to utilize Conrail's inspection team. R.2:11-3(e)(1)(E).
The summary judgment in favor of Conrail is reversed. The matter is remanded to the Law Division for entry of judgment in favor of plaintiffs.
NOTES
[1] "A Guide to Damage Prevention Services and Claims Procedures" (the Guide) indicates that Conrail provides freight inspection services and that upon prompt notification of any loss an inspector will be dispatched. That Guide is not part of the shipping contract.
[2] While the matter before us is not controlled by the U.C.C., the code represents a considered examination of general law with respect to contracts and can be instructive in understanding the meaning of the contested terms. See Loos & Dilworth v. Quaker State Oil Refining Corp., 347 Pa.Super. 477, 500 A.2d 1155, 1160 (1985) (applying principles of U.C.C. by analogy to franchise contract).