2016 IL App (1st) 140317

SIXTH DIVISION
June 30, 2016

No. 1-14-0317

| | | |
|---|---|---|
| DAWN RENEE GOLDSTEIN, Independent | ) | Appeal from the Circuit Court |
| Executor of the Estate of Gilbert Gail Gerth, | ) | of Cook County. |
| Deceased, | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterdefendant-Appellant, | ) | No. 12 CH 39151 |
| | ) | |
| v. | ) | |
| | ) | Honorable |
| GRINNELL SELECT INSURANCE COMPANY, | ) | Kathleen M. Pantle |
| an Iowa Stock Fire and Casualty Company, | ) | Judge Presiding. |
| | ) | |
| Defendant and | ) | |
| Counterplaintiff-Appellee. | ) | |

JUSTICE HALL delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Delort concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, Dawn Renee Goldstein, executor of the estate of Gilbert Gail Gerth, deceased, appeals from an order of the circuit court of Cook County denying her motion for summary judgment and granting summary judgment to the defendant, Grinnell Insurance

Company, on her complaint for declaratory judgment. On appeal, the plaintiff contends that: (1) an automobile liability policy excluding underinsured-motorist coverage for an owned vehicle is unenforceable under Illinois law; and (2) the policy exclusion does not apply because a riding lawnmower is not a motor vehicle. The plaintiff's contentions present issues of first impression in Illinois.

¶ 2                                      BACKGROUND

¶ 3     The facts are not in dispute. Mr. Gerth was riding his Snapper lawnmower on 2300th Street in Effingham County, Illinois, when the riding lawnmower was rear-ended by a pickup truck operated by Gary Sachau, killing Mr. Gerth. At the time of the accident, Mr. Sachau was insured under an automobile insurance policy with liability limits of $30,000. Mr. Gerth was insured under an automobile insurance policy with The Hartford Insurance Company containing underinsured-motorist liability limits of $100,000 per person. He was also insured under an automobile insurance policy with the defendant containing single underinsured-motorist liability limits of $1 million per accident.

¶ 4     The plaintiff settled her claim against Mr. Sachau for $30,000 and her underinsurance claim with The Hartford for its policy limit of $100,000 minus a $30,000 credit for her settlement with Mr. Sachau. The defendant denied coverage under the following provision of the automobile liability policy it issued to Mr. Gerth:

> "EXCLUSIONS
> A. We do not provide Underinsured Motorists Coverage for 'bodily injury' sustained:
>
> 1. By an 'insured' while 'occupying', or when struck by, any motor vehicle owned by that 'insured' which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle."

¶ 5    On October 23, 2012, the plaintiff filed a complaint for declaratory judgment against the defendant. The plaintiff alleged that the policy exclusion for an owned vehicle was unenforceable in the context of underinsured-motorist coverage in Illinois and that a riding lawnmower was not a "motor vehicle" under the defendant's policy, the underinsured motorist provisions of Illinois law and Illinois case law. The defendant filed an answer to the complaint and a counterclaim for declaratory judgment. [1]

¶ 6    The parties filed motions for summary judgment on their respective complaints. Following a hearing on the motions, the circuit court denied the plaintiff's motion for summary judgment on her complaint for declaratory judgment and granted summary judgment to the defendant on its counter-complaint for declaratory judgment. The court found that a riding lawnmower was a "motor vehicle" under the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2010)), which had been incorporated into the Illinois Insurance Code (215 ILCS 5/1 *et seq.* (West 2010)). See *Roberts v. Country Mutual Insurance Co.*, 231 Ill. App. 3d 713, 716-17 (1992). The court further found that the 1995 amendment of the Insurance Code permitting the owned-vehicle exclusion in uninsured-motorist coverage applied to underinsured-motorist coverage as well.

¶ 7    The plaintiff filed a notice of appeal from the circuit court's order denying her motion for summary judgment and granting summary judgment to the defendant on its counter-complaint.

¶ 8                                          ANALYSIS

¶ 9                                    I. Standards of Review

---

[1] The record on appeal contains the plaintiff's answer to the defendant's counterclaim but does not contain the counterclaim. In its appellee's brief, the defendant stated that it was preparing a supplemental record, which would contain a complete copy of its answer and counterclaim, but has not yet done so.

¶ 10   The grant of summary judgment, the construction of an insurance policy and the construction of a statute are reviewed *de novo*. *Majid v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 2015 IL App (1st) 132182, ¶ 13; *Mt. Hawley Insurance Co. v. Robinette Demolition, Inc.*, 2013 IL App (1st) 112847, ¶ 12.

¶ 11                                  II. Applicable Principles

¶ 12   " 'Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.' " *Mt. Hawley Insurance Co.*, 2013 IL App (1st) 112847, ¶ 14 (quoting *Illinois Farmers Insurance Co. v. Hall*, 363 Ill. App. 3d 989, 993 (2006)). Where, as in this case, the parties have filed cross-motions for summary judgment, the parties invite the court to determine the issues as a matter of law and enter judgment in favor of one of the parties. *Mt. Hawley Insurance Co.*, 2013 IL App (1st) 112847, ¶ 14.

¶ 13   The rules of construction applicable to contracts are also applicable to insurance policies. *Mt. Hawley Insurance Co.*, 2013 IL App (1st) 112847, ¶ 15. Our primary objective is to ascertain and give effect to the parties' intentions as expressed in the policy's language. *Mt. Hawley Insurance Co.*, 2013 IL App (1st) 112847, ¶ 15. We construe the policy as a whole giving effect to every provision; unambiguous words in the policy are to be given their plain, ordinary and popular meaning. *Mt. Hawley Insurance Co.*, 2013 IL App (1st) 112847, ¶ 15.

¶ 14   "The cardinal rule of statutory construction is to determine and give effect to the legislature's intent." *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992). "[S]ections of the same statute should be considered to be *in pari materia*, and that each

section should be construed with every other part or section so as to produce a harmonious whole." *Sulser*, 147 Ill. 2d at 555.

¶ 15                                    III. Discussion

¶ 16        " 'Parties to a contract may agree to any terms they choose unless their agreement is contrary to public policy.' " *Allstate Property & Casualty Insurance Co. v. Trujillo*, 2014 IL App (1st) 123419, ¶ 18 (quoting *Sulser*, 147 Ill. 2d at 559). Our supreme court has a long tradition of upholding the rights of parties to freely contract, and, therefore, a court must use the power to declare a private contract invalid on public policy grounds sparingly. *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 55 (2011). "An agreement will not be invalidated unless it is clearly contrary to what the constitution, the statutes, or the decisions of the courts have declared to be the public policy of Illinois or unless the agreement is 'manifestly injurious to the public welfare.' " *Phoenix Insurance Co.*, 242 Ill. 2d at 55 (quoting *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 129-30 (2005)). The party seeking to invalidate an agreement as against public policy carries a " 'heavy burden' of demonstrating a violation of public policy.' " *Phoenix Insurance Co.*, 242 Ill. 2d at 55 (quoting *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 65 (2006)). Our legislature occupies a superior position in determining public policy. *Phoenix Insurance Co.*, 242 Ill. 2d at 55-56.

¶ 17                              A. Owned Vehicle Exclusion

¶ 18        The plaintiff contends that the owned-vehicle exclusion in underinsured-motorist coverage is unenforceable under section 143a-2 of the Insurance Code (215 ILCS 5/143a-2 (West 2010)). Prior to 1995, our courts held that the owned-vehicle exclusion in an automobile liability policy was unenforceable as to both uninsured- and underinsured-

motorist coverage. See *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167 (1977) (uninsured-motorist coverage); *Hettenhausen v. Economy Fire & Casualty Co.*, 154 Ill. App. 3d 488 (1987) (underinsured-motorist coverage).

¶ 19    In 1995, the legislature amended section 143a of the Insurance Code, as follows:

> "Uninsured motor vehicle coverage does not apply to bodily injury, sickness, disease, or death resulting therefrom, of an insured while occupying a motor vehicle owned by, or furnished or available for the regular use of the insured, a resident spouse or resident relative, if that motor vehicle is not described in the policy under which a claim is made or is not a newly acquired or replacement motor vehicle covered under the terms of the policy." Pub. Act 89-206 (eff. July 21, 1995) (amending 215 ILCS 5/143a (West 1996)).

¶ 20    The plaintiff maintains that the owned-vehicle exclusion remains unenforceable in the context of underinsured-motorist coverage. The plaintiff argues that the legislature did not amend section 143a-2, as it did section 143a, to permit the owned-vehicle exclusion in the context of underinsured-motorist coverage. She further argues that the purpose of the underinsured-motorist statute differs from that of the uninsured-motorist statute and the application of the amendment would defeat the purpose of the underinsured-motorist coverage.

¶ 21    "The 'principle purpose' of the mandatory liability insurance requirement is 'to protect the public by securing payment of their damages.' " *Phoenix Insurance Co.*, 242 Ill. 2d at 57 (quoting *Progressive Universal Insurance Co. of Illinois*, 215 Ill. 2d at 129). In furtherance of that purpose, uninsured-motorist coverage is required so that the policyholder is placed in substantially the same position he would occupy if he were injured or killed in an accident

where the party at fault carried the minimum liability coverage specified in section 203 of the Financial Responsibility Law. *Phoenix Insurance Co.*, 242 Ill. 2d at 57; see 625 ILCS 5/7-203 (West 2010). From the legislative history, the supreme court concluded that the "legislative purpose of the underinsured-motorist coverage provision is the same as that of uninsured-motorist coverage, '*i.e.*, to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance.' " *Phoenix Insurance Co.*, 242 Ill. 2d at 57 (quoting *Sulser*, 147 Ill. 2d at 555). Relying on its prior opinion in *Sulser*, the court stated further as follows:

> "The court [in *Sulser*] noted that '[u]ninsured and underinsured motorist policies provide virtually the same coverage to the insured,' and that by providing for underinsured-motorist coverage in addition to uninsured-motorist coverage, 'the legislature avoided the absurdity of a situation where a policyholder would receive fewer benefits in the fortuitous event of being injured by an underinsured rather than an uninsured motorist.' " *Phoenix Insurance Co.*, 242 Ill. 2d at 57-58 (quoting *Sulser*, 147 Ill. 2d at 557.

¶ 22    The plaintiff relies on *Estate of Sinn v. Mid-Century Insurance Co.*, 288 Ill. App. 3d 193 (1997).[2] In that case, the reviewing court determined that the public policies behind the uninsured-motorist statute and the underinsured-motorist statute were different. The court noted that the purpose of the uninsured-motorist statute was "to place the insured policyholder in substantially the same position he would occupy if the uninsured driver had been *minimally* insured." (Emphasis in original.) *Sinn*, 288 Ill. App. 3d at 197 (citing *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148, 152 (1995)). In contrast, the public

_____

[2]On October 1, 1997, the supreme court granted leave to appeal in *Estate of Sinn*, 174 Ill. 2d 559 (1997) (table). The petition was dismissed on January 7, 1998.

policy behind the underinsured-motorist statute was "to place the insured policyholder in the same position he would occupy if the underinsured driver had insurance in the same amount as the policyholder." *Sinn*, 288 Ill. App. 3d at 197 (citing *Sulser*, 147 Ill. 2d at 558).

¶ 23   The plaintiff's reliance on *Sinn* is misplaced. The legislature's 1995 amendment of section 143a of the Insurance Code allowing insurers to exclude unnamed owned vehicles from uninsured-motorist coverage meant that the insured would no longer be placed in the same position as if the wrongdoer carried the minimum insurance coverage, *i.e.*, the public policy considerations behind the uninsured-motorist statute. Since the legislature chose to override the public policy behind the uninsured-motorist statute as to this exclusion, there is no rational basis reaching a different result in the context of the underinsured-motorist statute on the ground that the public policies behind the two statutes differ.

¶ 24   In this case, had Mr. Sachau been uninsured, the owned-vehicle exclusion would have operated to deny uninsured-motorist coverage to Mr. Gerth. To permit the plaintiff to recover under the underinsured coverage in the policy in this case would be based solely on the fortuitous event that Mr. Sachau carried some insurance, rather than no insurance. As our supreme court stated, "by providing for underinsured-motorist coverage in addition to uninsured-motorist coverage, 'the legislature avoided the absurdity of a situation where [the] policyholder would receive fewer benefits in the fortuitous event of being injured by an underinsured rather than by an uninsured driver.' " *Phoenix Insurance Co.*, 242 Ill. 2d at 57-58 (quoting *Sulzer*, 147 Ill. 2d at 557); see *Hall v. Burger*, 277 Ill. App. 3d 757, 767 (1996) ("the [*Sulser*] court labeled 'absurd' any construction whereby claimant would receive greater or lesser benefits due to the 'fortuitous event of being injured by an underinsured motorist rather than by an uninsured motorist' " (quoting *Sulzer*, 147 Ill. 2d at 557)).

¶ 25    We also reject the plaintiff's argument that the failure of the legislature to amend the underinsured-motorist statute as it did the uninsured-motorist statute supports her position. In the first instance, the plaintiff failed to support her argument with any authority and we would be justified in holding the argument forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). Even if not forfeited, her argument fails.

¶ 26    Section 143a of the Insurance Code is captioned "Uninsured and hit and run motor vehicle coverage," and section143a-2 of the Insurance Code is captioned "Additional uninsured motor vehicle coverage." Under Illinois liability law, "uninsured-motorist[ ] and underinsured-motorist coverage are 'inextricably linked.' " *Phoenix Insurance Co.*, 242 Ill. 2d at 58 (quoting *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 404 (2010)); see *Sulser*, 147 Ill. 2d at 554-55 (considering section 143a(4) (uninsured-motorist provision) together with section 143a-2(3) (underinsured-motorist provision)). Since underinsured motorist coverage is another form of uninsured motorist coverage, there is no rational basis for arriving at a different conclusion regarding the enforceability of the owned-vehicle exclusion in the context of underinsured-motorist coverage.

¶ 27    Guided by the above principles, we hold that the owned-vehicle exclusion for uninsured-motorist coverage in an automobile liability policy applies in the context of underinsured-motorist coverage.

¶ 28                                II. Riding Lawnmower

¶ 29    The plaintiff contends that the riding lawnmower Mr. Gerth was riding at the time of the accident was not a "motor vehicle," as contemplated by the underinsured-motorist statute. She maintains that it was not necessary to provide underinsured-motorist coverage since a riding lawnmower is not a "vehicle designed for use on public highways and required to be

registered in this State," as required by section 143a-2(1). 215 ILCS 5/143a-2(1) (West 2010). Contrary to the plaintiff's argument, the result in this case does not depend on whether the riding lawnmower was required to carry underinsured-motorist coverage, but whether the riding lawnmower was a "motor vehicle," as described under the policy exclusion for owned vehicles.

¶ 30    The cases the plaintiff relies on do not support her argument. *Harrington v. American Family Mutual Insurance Co.*, 332 Ill. App. 3d 385 (2002), dealt with the reformation of an insurance policy. The fact that the insured in that case was injured while riding a bicycle, which the plaintiff argues is similar to a riding lawnmower, was not a factor in the court's decision that the insurer was required to reform its policy to include underinsured-motorist coverage where it had failed to offer its insured underinsured-motorist coverage. *Harrington*, 332 Ill. App. 3d at 392-93. In *Rockford Mutual Insurance Co. v. Schuppner*, 182 Ill. App. 3d 898 (1989), the insurance policy defined the term "motor vehicle," and the reviewing court found that the determination that the truck was a motor vehicle and not a farm implement was consistent with the insurance policy's intended coverage. *Schuppner*, 182 Ill. App. 3d at 906.

¶ 31    The plaintiff then maintains that a riding lawnmower is not a "motor vehicle" as defined in the Vehicle Code. Section 1-146 of the Vehicle Code defines "motor vehicle," in pertinent part as follows:

> "Every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, except for vehicles moved solely by human power, motorized wheelchairs, low-speed electric bicycles, and low-speed gas bicycles." 625 ILCS 5/1-146 (West 2010).

A "vehicle" is defined in pertinent part as:

"Every device, in, upon or by which any person or property is or may be transported or drawn upon a highway or requiring a certificate of title under Section 3-101(d) of this Code, except devices moved by human power, devices used exclusively upon stationary rails or tracks and snowmobiles as defined in the Snowmobile Registration and Safety Act [(625 ILCS 40/1-1 *et seq.* (West 2010)]."

625 ILCS 5/1-217 (West 2010).

¶ 32    The plaintiff argues that the Vehicle Code's definition of a motor vehicle does not apply to a riding lawnmower because a riding lawnmower is more akin to a low-speed electric bicycle, which is specifically excluded from the definition of a motor vehicle. She further argues that the Vehicle Code's definition does not apply because the sections defining all-terrain vehicles and recreational off-highway vehicles specifically exclude lawnmowers as equipment. See 625 ILCS 5/1-101.8 (West 2010) (all-terrain vehicle); 625 ILCS 5/1-168.8 (West 2010) (recreational vehicle).

¶ 33    The fact that the statutory definitions of all-terrain vehicles and recreational off-highway vehicles exclude lawnmowers as equipment does not support the plaintiff's argument. Those definitions define specific types of vehicles and specify that a "lawnmower," is not considered to be an all-terrain vehicle or a recreational vehicle. But, only "lawnmowers," not "riding lawnmowers," are excluded. Moreover, the general definition of motor vehicle does exclude from its definition specific types of vehicles that otherwise might be considered to be motor vehicles. Riding lawnmowers fit within the definition of vehicle and motor vehicle and are not among the exceptions listed in either definition. The fact that an electric bicycle may be similar to a riding lawnmower does not allow this court to add riding lawnmowers to the

11

exclusions set forth in sections 1-146 and 1-217 of the Vehicle Code. "Unless omitted through legislative oversight we are not permitted to add words to a statute that have not been included." *Thompson Electronics Co. v. Easter Owens/Integrated Systems, Inc.*, 301 Ill. App. 3d 203, 207 (1998). The legislature could have excluded riding lawnmowers from the definition of both vehicle and motor vehicle but did not to do so. *Thompson Electronics Co.*, 301 Ill. App. 3d at 207 (the court would not add bidding on a project to the licensing requirements in the statute where the legislature had the opportunity to but did not add it to the statute); see *Roberts*, 231 Ill. App. 3d at 717 (the legislature could have excluded an all-terrain vehicle if it was not to be considered a motor vehicle for purposes of the uninsured motorist statute).

¶ 34     The plaintiff directs our attention to the decision in *Harris v. State*, 686 S.E.2d 777 (Ga. 2009), wherein the Georgia Supreme Court found that a riding lawnmower was not a motor vehicle under the Georgia motor vehicle theft statute. In the absence of a definition of motor vehicle, the court found the term was best defined by its ordinary meaning, rejecting the broader definitions contained in other statutes. *Harris*, 686 S.E.2d at 782-83. In contrast, the Vehicle Code's definition of motor vehicle has been incorporated into the Insurance Code. *Roberts*, 231 Ill. App. 3d at 716-17.

¶ 35     Applying that definition, we find that a riding lawnmower is a motor vehicle. Therefore, Mr. Gerth was occupying an owned motor vehicle at the time of the accident resulting in his death.

¶ 36                                   CONCLUSION

¶ 37 We hold that the owned-vehicle exclusion of underinsured-motorist coverage in an automobile liability insurance policy is enforceable. We further hold that a riding lawnmower is a motor vehicle under the Vehicle Code.

¶ 38 The judgment of the circuit court is affirmed.

¶ 39 Affirmed.