**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230516-U

Order filed December 3, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, | ) ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| | ) | Appeal No. 3-23-0516 |
| Plaintiff-Appellant, | ) | Circuit No. 19-L-23 |
| | ) | |
| v. | ) | Honorable |
| | ) | Todd L. Martin, |
| | ) | Judge, Presiding. |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) | |
| | ) | |
| Defendant-Appellee. | ) | |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice McDade and Justice Brennan concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The circuit court erred when it ruled in favor of the insurance company for the parties' cross-motions for summary judgment when ambiguities exist in the policy that must be construed against the insurer.

¶ 2    The plaintiff, International Union, UAW (UAW), brings this action against Travelers Property Casualty Company of America (Travelers) in response to a dispute regarding insurance

policy interpretation. On appeal, UAW argues that the circuit court improperly ruled on the parties' cross motions for summary judgment by finding in favor of Travelers and its interpretation of the blanket policy. For the following reasons, we reverse and remand for further proceedings.

¶ 3                                      I. BACKGROUND

¶ 4        UAW owns several buildings located at 1000 East Center Street, Ottawa, Illinois (Ottawa Location). UAW obtained a property insurance policy from Travelers for the Ottawa Location and several other locations in the United States, which was effective from June 1, 2016, to June 1, 2017. The structures covered at the Ottawa Location were listed in the policy declarations as a Premises Location and designated as Location No. 14 and Building No. 14. The policy further clarified that a building under the policy was a "designated building or structure at the premises described in the Declarations."

¶ 5        Of relevance to this appeal, the coverage limits for the Ottawa Location were outlined in the policy as follows:

> "COVERAGE AND LIMITS OF INSURANCE – DESCRIBED PREMISES
>
> Insurance applies on a BLANKET basis only to a coverage or type of property for which a Limit of Insurance is shown below.
>
> The most we will pay for loss or damage in any one occurrence at any one premises location is 105% of the value(s) for each Building or Structure and separately for the total of Your Business Personal Property (including furniture and fixtures, machinery and equipment, "electronic data processing equipment", "stock", all other personal property owned by you and used in your business and your use interest in improvements and betterments) and Personal Property of

2

Others at each premises location as shown on the latest Statement of Values filed with us and at each premises location as subsequently reported to and agreed by us to insure.

If, at the time of loss, the values shown on the latest Statement of Values on file with us or the values at premises locations subsequently reported to us are not individually stated for each Building, each Structure, and for Your Business Personal Property and Personal Property of Others at each premises location:

1. The value for each Building and Structure will be determined by multiplying the reported Building and Structure value by the proportion that the square footage of the individual Building and Structure bears to the total square footage of all Buildings and Structures contemplated in the reported Building and Structure value."

¶ 6    On February 28, 2017, a tornado damaged several buildings at the Ottawa Location. After UAW filed its claim, Travelers calculated the statement of values for the buildings and structures located at the premises location. The calculations for the value and coverage limit of each building at the Ottawa Location were presented as follows:

| Building | Square Footage | Percentage to Whole | Coverage Amount |
| --- | --- | --- | --- |
| Administration | 11,758 | 44% | 1,768,204.76 |
| Motel | 9,396 | 35% | 1,412,999.82 |
| Training Facility | 5,465 | 21% | 821,843.77 |
| Total | 26,619 | 100% | 4,003,048.35 |
| **Coverage** | 3,812,427.00 | | |
| **Margin Clause** | 105% | | |

**Available Coverage**   4,003,048.35

These calculations were not included in the policy itself.

¶ 7        Due to the tornado, the administrative building incurred approximately $96,018.61 in damages. For this building, Travelers paid UAW the full amount in estimated damages. Regarding the other damaged building, the motel, UAW asserted that it incurred approximately $3.3 million in damages. Based on the calculations above, Travelers paid UAW $1,412,999.82. In response, UAW filed for a declaratory judgment against Travelers, arguing that it should have been paid up to $3,181,204.58, which was the coverage amount for the administrative building and motel combined.

¶ 8        Both parties filed motions for summary judgment. A joint statement of undisputed facts was filed with the court in conjunction with those motions.

¶ 9        In its motion UAW argued that Travelers's interpretation of the policy did not give meaning to all clauses in the policy. It primarily argued that this specific policy provision provided a blanket policy for any one occurrence at a premises location, and that limit was equal to 105% of the values of all buildings on the premises. In this instance, UAW argued, the limit equaled $4,003,048.35. UAW further contended that the building-by-building limit Travelers argued for was an unreasonable interpretation of the policy that did not give full meaning of the blanket policy. In the alternative, UAW added the prorated values of both the motel ($1,412,999.82) and the administrative building ($1,768,204.76) together, which equaled $3,181,204.58, and argued that this was the minimum amount it should be entitled to under its claim.

¶ 10        In arguing its position, Travelers focused on the meaning of "each Building" as used in the policy rather than the word "blanket." Travelers first calculated the coverage limit for the

4

motel by calculating the value of the building. It then multiplied the reported value of the Ottawa Location ($3,812,427) by the proportion of square footage the motel bore in relation to the entire square footage of the premises location. This resulted in a value of $1,345,714.12. Travelers then calculated 105% of this number, which resulted in a coverage limit of $1,412,999.82 for the motel. Because UAW claimed a higher amount in damages for the motel than what the coverage limit offered, Travelers only paid out $1,412,999.82, as the maximum coverage. It further argued that following UAW's position would render provisions of the policy meaningless, namely the calculation of individual building values. If the insured was eligible to receive 105% of the value of the premises location, without consideration of whether all the buildings were damaged, Travelers argued there would be no need to calculate the values of each building in the statement of values.

¶ 11    The circuit court denied UAW's motion and granted Travelers's motion for summary judgment. UAW now appeals.

¶ 12                                  II. ANALYSIS

¶ 13    On appeal, UAW argues that the court erred in ruling in Travelers's favor because its interpretation of the policy does not give meaning to all provisions contained in it. Specifically, UAW contends that Travelers ignores the clause that provides blanket coverage in favor of its building-by-building coverage. It argues that the applicable limit is not what Travelers paid out for each building, but the sum of the values of the two buildings damaged during the tornado, which is $3,181,204.58.

¶ 14    In return, Travelers argues that what it describes as the margin clause expressly provides that the most it will pay for damages is "105% of the value(s) for each Building or Structure" at each premises location. Therefore, the policy provides a building-by-building limit of liability,

5

not a collective limit for the premises location. It argues that UAW's stance that the total coverage limit applies for whenever a building on the premises is damaged is unreasonable because it renders the valuation of each building meaningless if loss at the premises location will always result in receiving the value of the entire location instead of the value for each building damaged. Additionally, Travelers argues that UAW's alternative argument that it should receive the value of the sum of the two damaged buildings would lead to an absurd result because the amount UAW could receive on the motel would necessarily change based on whether any other buildings were damaged and not on its own value.

¶ 15       This matter comes before us following a decision on cross-motions for summary judgment. Granting a motion for summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). " 'A genuine issue of material fact exists where the facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts.' " *Buck v. Charletta*, 2013 IL App (1st) 122144, ¶ 56 (quoting *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 724 (2010)). When parties file cross-motions for summary judgment, they essentially agree that there are no genuine issues of material fact and request for the circuit court to rule on which party is entitled to judgment as a matter of law. *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 13. However, we are not required to accept this concession and may still find an issue of material fact exists if the record indicates as such. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Upon review of the record, we agree with the parties that no genuine issue of material facts exists. We review the circuit court's

ruling on a motion for summary judgment *de novo*. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 16.

¶ 16    The present dispute rests solely on the interpretation of the parties' insurance policy contract, which we also review *de novo*. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 441 (1998). The rules of construction for interpreting contracts are applicable to insurance policies. *Goldstein v. Grinnell Select Insurance Co.*, 2016 IL App (1st) 140317, ¶ 13. Thus, our primary objective is to ascertain and give effect to the parties' intentions as indicated in the language of the policy. *Id.* We construe the policy as a whole, giving effect to every provision. *Id.* Unambiguous terms in the policy are to be given their plain and ordinary meaning. *Id.* If the terms of the insurance policy are clear and unambiguous, we will apply them as written unless such application is against public policy. *State Farm*, 181 Ill. 2d at 441-42. Provisions of an insurance agreement must be interpreted in the factual context of the case. *Putzbach v. Allstate Insurance Co.*, 143 Ill. App. 3d 1077, 1081 (1986); *Indiana Insurance Co. v. Pana Community Unit School District No. 8*, 314 F.3d 895, 900-01 (7th Cir. 2002).

¶ 17    When a policy's words are unambiguous, a court must afford them their plain, ordinary, and popular meaning. *Employers Insurance v. James McHugh Construction Co.*, 144 F.3d 1097, 1104 (7th Cir. 1998). If the words in an insurance policy are susceptible to more than one reasonable interpretation, the provision is considered ambiguous (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74 (1991)) and will be construed against the insurer who drafted the policy (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 109 (1992)). A court should only consider the plain meaning of the policy language and should not search for a nonexistent ambiguity. *Dash Messenger Service, Inc. v. Hartford Insurance Co.*, 221 Ill. App. 3d 1007, 1010 (1991); *Indiana Insurance Co.*, 314 F.3d at 902-03.

7

¶ 18    The interpretation of this policy hinges on only a few words: "blanket," "building," and "each." The language in the policy that UAW uses to argue that it is entitled to blanket coverage rather than building-by-building coverage is as follows: "Insurance applies on a BLANKET basis only to a coverage or type of property which a Limit of Insurance is shown below." The provision continues, explaining that "[t]he most we will pay for loss or damages in any one occurrence at any one premises location is 105% of the value(s) for each Building or Structure," and that the value of each building will be calculated based on the square footage of the building in relation to the square footage of the entire premises location. The next provision, entitled "Blanket Description of Coverage or Property," indicates that all buildings covered by this policy, which includes buildings at 63 locations throughout the country, have a blanket limit of approximately $112 million.

¶ 19    Travelers, having elected to label its policy as applying on a "blanket" basis, should be bound by the ordinary definition of the word unless it is inconsistent with the terms of the whole policy. *Columbia College v. Pennsylvania Insurance Co.*, 157 S.E. 2d 416, 424-25 (S.C. 1967). The designation of the type of insurance does not create nor completely bind the parties to the designation, but it does indicate the parties' intent. *Id.* A "blanket policy," is a term of art specific to insurance (*National Bank of Burlington v. Fidelity & Casualty Co. of New York*, 125 F. 2d 920, 924 (4th Cir. 1942)) that may describe a policy that "covers different types of property at one or more locations and does not specify the valuation of the items protected under the blanket, but allocates an overall limit to the policy, upon which premiums are based." *Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Insurance Co.*, 176 F. 3d 794, 798 (4th Cir. 1999). Another definition is that a compound, or blanket, policy is a one that "insures property collectively without providing in the event of a loss for a distribution

8

of the insurance to each item." *Wilson and Co. v. Hartford Fire Insurance Co.*, 254 S.W. 266, 281 (Mo. 1923); *National Bank v. Fidelity & Casualty Co.*, 125 F.2d 920, 924 (4th Cir. 1942).

¶ 20     There is no dispute that the policy at issue here encompasses several pieces of property located in multiple states throughout the United States. The language in the policy provides that the "blanket" portion of the policy only applies to the kind of coverage or type of property that will be covered. The language thereafter, that the "Limit of Insurance" is as further described in the policy, indicates that the term "blanket" does not apply to the limits of the policy. From this reading, the policy establishes that each building covered has the same kind of insurance coverage as any other, unless the building is listed in an exception. Thus, while the policy as a whole acts as a "blanket" policy that covers all property UAW owns, the language also clearly states that the limit on insurance coverage to be applied to each property is different.

¶ 21     Accordingly, we next look to the limit of coverage that is provided under the policy. The policy states that "[t]he most [Travelers] will pay for loss or damage in any one occurrence at any one premises location is 105% of the value(s) for each Building or Structure," and that the value for each building will be determined by each building's square footage in relation to the entire property. The policy plainly states that, if damaged during an occurrence, "each Building or Structure" will be paid at a maximum 105% of its value. Under the policy, "building" is defined as "the designated building or structure at the premises described in the Declarations." The entirety of the Ottawa Location is described in the declarations as Location No. 14 *and* Building No. 14. Because of this designation, the policy declarations recognize only one "building or structure" at this particular premises location, and we may construe that to mean the coverage limit of 105% for "each Building or Structure" at the Ottawa Location encompasses the entire premises location.

9

¶ 22    Following the policy's definition of "building," the Ottawa Location is considered only one "building or structure," no matter what the value of each structure is estimated to be. This interpretation is further supported by the declarations, which does list several buildings with the same premises location number but have been assigned separate building numbers. If the parties' intent was to separate the structures at the Ottawa Location so that each would receive its own coverage limit, the buildings would be listed separately on the declarations, much like the other buildings listed that have individual building numbers but share an address and location number.

¶ 23    However, this interpretation still does not give effect to all clauses in the policy. See *Goldstein*, 2016 IL App (1st) 140317, ¶ 13 ("We construe the policy as a whole giving effect to every provision"). If the intent of the parties was to only provide those structures with a designated building number a coverage limit, it would render the provision calculating the value for each building or structure at a single premises location meaningless. There would be no need to calculate building values based on total square footage to determine the coverage limit for each individual building, because every structure would be entitled to the entire coverage amount given to the corresponding building number. Determining how many buildings are covered under a building number or how much damage each building incurred would be unnecessary as only one coverage limit would exist, regardless of the damage to individual structures.

¶ 24    The terms of the policy have created ambiguity regarding what "building" means and how to give effect to the clause explaining the calculations to determine the value of each building at a single premises location. Because there is ambiguity in the policy, it is appropriate to construe that ambiguity against Travelers as the drafter of the policy. See *Outboard Marine Corp.*, 154 Ill. 2d at 109. We therefore find that Travelers's interpretation, which places additional limits on coverage for individual structures not provided with separate building

10

numbers, is incorrect and that the circuit court erred in granting Travelers's motion for summary judgment.

¶ 25        We also find that UAW's initial interpretation is incorrect. UAW initially argued that it is entitled to the minimum coverage equal to 105% of the value of the administrative office and the motel combined. However, no provision in the policy includes the calculation of totaling the value of each building or structure to reach an overall limit. Instead, the only reasonable interpretation is that UAW may recover the entire coverage limit listed for the Ottawa Location, as the declarations have designated all the structures at this premises location as one "building or structure" under the policy. Accordingly, the court erred in finding in Travelers's favor, and we must reverse and remand for further proceedings to determine exactly how much UAW should receive for its loss.

¶ 26        III. CONCLUSION

¶ 27        The judgment of the circuit court of La Salle County is reversed and remanded.

¶ 28        Reversed and remanded.

11