**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240546-U

Order filed August 25, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| SARAH KUBIK, as Trustee of the Sarah J. Kubik Declaration of Trust Dated February 1, 2002 and JEFFREY KUBIK, | ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiffs-Appellants, | ) ) | Appeal No. 3-24-0546 Circuit No. 22-CH-35 |
| v. | ) ) ) | |
| DARIEN CLUB OWNERS ASSOCIATION, JOHN BECKER, ALAN MCNEA, GEORGE BATTAGLIA, SARA VAINCE, RAY PIRRELLO, and DANIEL CARNET, | ) ) ) ) ) | Honorable Anne Therieau Hayes, Judge, Presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE BERTANI delivered the judgment of the court.
Presiding Justice Brennan and Justice Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: Summary judgment in favor of homeowners association was proper when the design manual for a residential community prohibited fencing, conflicting with the declarations that provided for design review committee approval as a condition precedent to improvements on property rather than an outright prohibition.

¶ 2        Appellants, Sarah and Jeffrey Kubik, filed a complaint against appellees, the Darien Club Owners Association (Association) and the members of its Board, seeking injunctive and declaratory relief. Specifically, the Kubiks sought a ruling that the Association could not authorize perimeter fencing because the standards created by the Design Review Committee (Committee) prohibited it. The Association filed a motion for partial summary judgment arguing that the Committee's standards conflicted with the Association's governing documents. It requested a finding that the Committee could not make blanket prohibitions on improvements because the Declaration for Darien Club (Declaration) did not allow the Committee to do so. The circuit court ruled in favor of the Association. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4        The Kubiks are residents of the Darien Club, a residential community located in Darien, Illinois. They have lived in this community since 1995. The Sarah Kubik Declaration of Trust Dated February 1, 2002, was the owner of record of the Kubiks' home at the outset of the litigation, but the trust dissolved after this lawsuit commenced.

¶ 5        The Association is a not-for-profit corporation charged with the management of the Darien Club. It is overseen by the Association Board and governed by the Declaration, the Darien Club Manual & Rules & Regulations (Manual), and the Darien Club Owners Association Bylaws (Bylaws).

¶ 6        Article 13 of the Declaration controls the architectural aspects of building within the community. Section 13.01 provides that the intent of this article is "to preserve the natural setting and beauty of the Premises, to establish and preserve a harmonious and aesthetically pleasing design for the Premises, and to protect and promote the value of the Lots, the Homes, and the Community Area." Section 13.03 creates the Committee and gives it the "right and power to

2

promulgate and amend from time to time written architectural standards, policies, procedures, and guidelines \*\*\* governing the construction, location, landscaping, and design of improvements." Those standards are outlined in the Manual and may be amended from time to time by the Committee. The standards created by the Committee apply to all homeowners in the community.

¶ 7 In addition to the standards set by the Committee, section 13.03 of the Declaration also lists "basic standards" that shall apply to all lots in the community. These basic standards include prohibitions on several types of antennae, anything that would impair the structural integrity of a building, and certain items affecting exterior appearance, such as reflective materials or air-conditioning units in windows.

¶ 8 The process for a homeowner to receive Committee approval for any desired improvements is found in section 13.05 of the Declaration. It provides that:

"no (i) construction of improvements, including, without limitation, Homes, driveways, walkways, decks, antennae, mailboxes, satellite dishes, outbuildings, fences or sheds \*\*\* shall be commenced or maintained by any Owner \*\*\* unless and until \*\*\* the plans and specifications \*\*\* shall have been submitted to and approved, in writing, by the Design Review Committee."

It further states that the Committee may refuse plans based upon "purely aesthetic considerations or noncompliance with the Standards."

¶ 9 The Committee created and promulgated the Manual containing the standards for property improvements. Prior to the amendment that is the subject of this lawsuit, the Manual's stated purpose was to "create as open an environment as possible and to maintain and enhance views." Section 5.6 of the Manual contained the Committee's previous standard for lot fencing dating to March 18, 1998. It stated that "fences of any type are prohibited on Lots, except as required for in-

3

ground pools. Such pool fencing is to be located within 20' of the pool." In other words, the standard created an outright prohibition on perimeter fencing on any lot.

¶ 10      In 2019 John and Marie Becker submitted a request for approval to install a pool and accompanying fence. Instead of requesting fencing to surround the pool as provided in the Manual, the Beckers proposed constructing a fence that would run along the perimeter of their lot. The Committee denied the submission, citing section 5.6 of the Manual, which only permitted pool fencing. The Beckers then asked the Board for a variance to allow the perimeter fence they desired. The Board, again citing section 5.6, denied the variance request. John ran for and was elected to the Board later that year and stated that he intended to examine the Manual's rules at the commencement of his term.

¶ 11      The Committee amended the Manual on November 8, 2021, including an amended section 5.6. The amendment deleted the blanket prohibition on fencing and instead revised the restriction to provide that "[i]n order to create as open an environment as possible and to maintain and enhance views, fences are discouraged on Lots except as required for in-ground pools ***. Fencing for safety reasons will be considered for approval for reasonable requests and whose approval shall not be unreasonably withheld." It also provided aesthetic rules for newly constructed fences, including restricting the type of material that could be used.

¶ 12      The Kubiks filed suit against the Association and members of its Board seeking injunctive relief, specific performance, declaratory relief, and mandamus on March 8, 2022. They alleged that the Association's Board improperly authorized perimeter fencing when making these amendments and that its members acted in a manner that disregarded their duties and obligations for their personal benefit. They also argued that the November 8, 2021, amendment was not in the

4

community's best interest and was enacted for the Board members' individual benefits, which violated their duties to the Association as a whole.

¶ 13     In response, the Association filed a counterclaim for declaratory relief. It requested a finding from the circuit court that the Association could permit perimeter fencing and that the Committee did not have the authority to altogether prohibit such types of fences in its Manual because they were permitted under the Declaration. The Association argued that section 13.05 of the Declaration authorized perimeter fencing if first approved by the Committee and that any prohibition on fencing created by the Manual conflicted with the Declaration's allowances.

¶ 14     The Association moved for partial summary judgment on March 8, 2022, requesting that the court resolve the issue of whether the Declaration allowed perimeter fencing and whether the Board or Committee could draft rules to prohibit fencing altogether. It argued that section 13.05 of the Declaration allowed all fences that receive approval from the Committee prior to construction. The Kubiks also moved for partial summary judgment on April 27, 2023, arguing that the Committee's 1998 standards relating to fences were consistent with the Declaration and thus valid and enforceable. While the Association sought a finding that the Declaration permitted all fencing types so long as approved by the Committee, the Kubiks maintained that the Declaration prohibited all fencing unless specifically allowed for in the Manual and approved by the Committee.

¶ 15     The circuit court entered partial summary judgment in favor of the Association on October 27, 2023. Specifically, it found that the Declaration allowed all fencing so long as the property owners received Committee approval and that neither the Association nor the Committee could create rules prohibiting fencing that would otherwise comply with the aesthetic standards and goals of the Association. In making this ruling, the court reasoned that:

"[I]f the intent of the declaration was to prohibit fences in their entirety, the existence of a Design Review Committee would be meaningless. The submission to the Board would be meaningless. There would be no need to submit anything to the Design Review Committee if the intent was a complete prohibition. Moreover, if it was the intent to prohibit, then that certainly could have been the language in the declaration itself.

* * *

Here, the provisions of the declaration of covenants evidence and express intent by the parties to establish and maintain an architectural review committee having the power to approve or disapprove all architectural construction or alterations within the subdivision.

* * *

[T]he intent is to allow improvements but subject to the approval of the plans for said improvements by the Design Review Committee to ensure that said improvements would maintain the architectural and aesthetic appearance of the premises and the natural beauty of the land. It is clear that is the intent of the declaration.

There is not intent from the declaration to have a complete prohibition. As I've indicated, that is not what the declaration says. In fact, the Court's reading of the section is that it intended for to construction of fences subject to approval. ***
[I]f it was prohibited, it would make the condition subsequent meaningless."

¶ 16    The court entered a written order granting the Association's motion for partial summary judgment for the reasons stated on the record. On August 8, 2024, the court entered an order stating

6

there was no reason to delay an appeal of its prior ruling as required by Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). The Kubiks now appeal.

¶ 17                                    II. ANALYSIS

¶ 18        This matter comes before us following a motion for partial summary judgment. Summary judgment is a drastic measure that should only be allowed when the right to relief is "clear and free from doubt." *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Granting a motion for summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005 (West 2022). "A genuine issue of material fact exists where the facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts." *Buck v. Charletta*, 2013 IL App (1st) 122144, ¶ 56. When parties file cross-motions for summary judgment, they essentially agree that there are no genuine issues of material fact and ask that the circuit court decide which party is entitled to judgment as a matter of law. *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 13. The circuit court's ruling on a motion for summary judgment is reviewed *de novo*. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 16. We may affirm on any basis supported by the record, even if the parties' legal arguments or the court's reasoning was incorrect. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995).

¶ 19        Here, there are no facts in dispute. What is in dispute, however, is how the Declaration and Manual should be interpreted as they relate to fencing improvements in the community. In order to resolve this, we must interpret the rules and guidelines set out in the Declaration to determine whether the Manual conflicts with it. We also review this issue under the *de novo* standard. *State Farm Mutual Automobile Insurance Co. v. Villiacana*, 181 Ill. 2d 436, 441 (1998). The community

7

declarations should be interpreted according to the principles of contract interpretation. *Seven Bridges Courts Ass'n v. Seven Bridges Development, Inc.*, 306 Ill. App. 3d 697, 705 (1999). Thus, our primary objective is to ascertain and give effect to the parties' intentions as indicated in the language of the Declaration. *Goldstein v. Grinnell Select Insurance Co.*, 2016 IL App (1st) 140317, ¶ 13. We construe the governing documents as a whole and give purpose to every provision. *Martindell v. Lake Shore National Bank*, 15 Ill. 2d 272, 283 (1958). A court should consider the plain meaning only and should not search for ambiguities that are nonexistent. *Dash Messenger Service, Inc. v. Hartford Insurance Co. of Illinois*, 221 Ill. App. 3d 1007, 1010 (1991). Additionally, restrictive covenants affecting use of land "should be strictly construed so that they do not extend beyond that which is expressly stipulated; all doubts must be resolved in favor of the free use of property and against restrictions." *Neufairfield Homeowners Ass'n v. Wagner*, 2015 IL App (3d) 140775, ¶ 16.

¶ 20    First, we turn to the Association's governing documents to determine the community's intent when creating these standards. *Goldstein*, 2016 IL App (1st) 140317, ¶ 13. The Kubiks argue that the Declaration's intent is consistent with the Committee's previous prohibition on perimeter fencing. The stated purpose of the Declaration is to "preserve the architectural and aesthetic appearance of the Premises and the natural beauty of the land," and the Kubiks contend that to follow this intent, all improvements are prohibited unless the Committee approves them. In other words, the Kubiks argue that the Declaration places a blanket ban on all improvements and gives the Committee authority to make exceptions to that ban. The Kubiks further argue that the inclusion of the word "no" in section 13.05(a) of the Declaration creates the prohibition on all improvements. Thus, the intent of the Declaration is to prohibit all improvements and require

homeowners to make special requests to the Committee to receive an exception to those blanket prohibitions.

¶ 21    The Association posits that the Declaration's intent is to allow improvements, but those improvements are conditioned on approvals and certain restrictions promulgated by the Committee. Its reading does not create an outright ban on improvements but instead creates restrictions on the improvements a homeowner may undertake. Otherwise, the Association argues, there would be no need for a Committee or Manual, because every improvement would be prohibited.

¶ 22    The Declaration is clear that the intent in maintaining architectural control over the lots is to create regulations that allow owners to build in an aesthetically pleasing manner but still preserve the beauty of nature. Its plain language indicates that the "natural beauty of the land" and preserving architectural aesthetics are priority. Thus, the first step in our task of determining whether the provisions of the governing documents fulfill this intent is to ascertain whether the language in the Declaration regarding improvements is ambiguous. *Goldberg v. Astor Plaza Condominium Association*, 2012 IL App (1st) 110620, ¶ 43. To do this, we apply the plain and ordinary meaning of the entire document. *Id.* If the terms are clear and unambiguous, we will apply those terms as written unless such application is against public policy. *State Farm*, 181 Ill. 2d at 441-42. If the words are susceptible to more than one reasonable interpretation, the provision is ambiguous, and we must perform a different analysis. *United States Fidelity & Guarantee Co. v. Wilkin Insulation Co*., 144 Ill. 2d 64, 74 (1991).

¶ 23    The circuit court's decision turns on two provisions in the Declaration. Section 13.04 of the Declaration conditions, "[n]o improvements of any nature whatsoever shall be commenced,

constructed, altered, added to or maintained upon any part of the Premises in violation of the Standards." Additionally, section 13.05(a) provides that

> "[t]o preserve the architectural and aesthetic appearance of the Premises and the natural beauty of the land, no (i) construction of improvements, including, without limitation, Homes, driveways, walkways, decks, antennae, mailboxes, satellite dishes, outbuildings, fences or sheds *** shall be commenced or maintained by an Owner *** unless and until *** submitted to and approved, in writing by the Design Review Committee."

¶ 24    Neither provision is ambiguous. While conditions have been placed on improvements, there is no outright prohibition in the Declaration against most improvements on a lot. A plain reading of these provisions is that improvements are permitted if the homeowner obtains approval prior to commencing construction of them. The language in sections 13.04 and 13.05 does not create the blanket prohibition that the Kubiks advocate. Rather, it places a condition precedent on all permitted improvements. If the intent was to place a blanket ban on certain improvements, the Declaration would explicitly state that prohibition. See *La Salle National Trust, N.A. v. Board of Directors of the 1100 Lake Shore Drive Condominium*, 287 Ill. App. 3d 449, 455 (1997). In fact, section 13.03 of the Declaration identifies several explicit prohibitions, including, antennae, reflective windows, and exterior projections. If the drafters of the Declaration intended to prohibit any other improvements, those improvements would be included in the provision that makes these specific prohibitions. *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 151-52 (1997) ("Where a [document] lists the things to which it refers, there is an inference that all omissions should be understood as exclusions."). No such prohibition on fencing exists in the Declaration,

10

and we will not create a blanket prohibition when one is not already present. See *id.* at 154-55 (a court may not inject nonexistent provisions when interpreting a statute or contract).

¶ 25    In considering the formative documents of the Association, we find the Declaration clearly follows its stated intent by allowing improvements and creating the Committee to make decisions regarding whether improvements are aesthetically pleasing. The 1998 Manual, in prohibiting all fencing other than those surrounding a pool, does not comport with the Declaration's stated intent. The 1998 Manual prohibits improvements that would otherwise be permitted under the Declaration so long as they complied with certain aesthetic standards. Given that the intended purpose of the organization and its governing documents is to allow for aesthetically pleasing improvements which the Manual prohibited, the Manual clearly does not follow the overall intent.

¶ 26    This leads into the next issue the Kubiks raise on appeal—whether the standards in the 1998 Manual conflict with the Declaration's provisions. Specifically, the Kubiks contend that the Declaration and Manual do not conflict, and the circuit court erred in concluding they did. The Kubiks first assert that the Declaration grants authority to the Committee to "promulgate and amend from time to time written architectural standards, policies, procedures, and guidelines (the "Standards") governing the construction, location, landscaping, and design of improvements." Further, any standards created by the Committee "shall be binding and enforceable to all Owners." The Kubiks thus assert that this provision gives the Committee the authority to create a blanket ban on fencing without being in conflict with the Declaration.

¶ 27    The Board and any committees must operate in a manner that does not conflict with the Declaration. *Stobe v. 842-848 West Bradley Place Condominium Association*, 2016 IL App (1st) 141427, ¶ 15 (finding that the Board could not promulgate a rule restricting leases when that restriction conflicts with the intent of the Declaration). These entities must follow the intent of the

11

Declaration and may not exceed their authority when creating additional rules or regulations. See *id.* Thus, we must determine whether the Committee's creation of a rule prohibiting all fencing other than that within 20 feet of a pool conflicts with the Declaration's intent and the authority given to the Committee by the Declaration. If we find that the Manual conflicts with the Declaration, it necessarily follows that the Committee exceeded its authority.

¶ 28        A plain reading of the relevant provisions indicates that improvements are permitted if the Committee approves. The Committee's decision must be based on "reasonable restrictions and conditions." Further, section 13.03 of the Declaration, which gives the Committee the authority to create rules for such improvements, states that the Committee may create "standards, policies, procedures and guidelines (the "Standards") governing the construction" and design of improvements. The Declaration also provides that the Committee may deny submissions "upon any ground which is consistent with the object and purposes of this Declaration, including but not limited to, purely aesthetic considerations or noncompliance with the Standards." Nothing in the Declaration empowers the Committee to create blanket prohibitions on certain improvements. The Committee's fencing prohibition is therefore not authorized by the Declaration, and a clear conflict exists between the Committee's fencing prohibition and the authority granted to it under the Declaration.

¶ 29        The Kubiks' last argument is that the reading taken by the Association and the circuit court leads to superfluous language in section 13.05. They contend that the circuit court erred in its ruling because terms cannot be read in a manner that creates superfluous language, and every word must be applied. See *Clanton v. Oakbrook Healthcare Center, Ltd.*, 2023 IL 129067, ¶ 34 (contract interpretation should give "effect to all provisions of the contract and *** not render any language superfluous."). The Kubiks rely on section 13.05(a), which states that "no (i) construction of

12

improvements" may commence until approved by the Committee. They argue that the circuit court did not consider the word "no" when it made its ruling. This "no," if interpreted in the way the Kubiks assert, creates the blanket ban that they contend is proper in their reading of the Declaration.

¶ 30    In making this argument, the Kubiks ignore the remainder of the provision, which includes the condition precedent of Committee approval prior to constructing improvements. They simply read this provision as "no improvements" rather than "no improvements that have not been approved." The circuit court did in fact give meaning to every word in the provision, including the word "no," because it recognized that the word no does not create a blanket ban on improvements but rather creates a condition precedent to improvements. Thus, the Kubiks' argument is meritless.

¶ 31    The Kubiks also argue that the circuit court's ruling renders section 13.03 granting the Committee the ability to create standards and approve or disapprove of plans meaningless, because it takes power away from the Committee. This argument is also without merit. The Kubiks' reading takes the position that the Declaration bans all improvements unless the Committee deems it worthy. This is not the role the Declaration establishes for the Committee. As already discussed above, the Declaration allows the Committee to create standards for permitted improvements, not to ban them completely. The Kubiks' reading of the court's ruling is therefore incorrect.

¶ 32    A plain reading of the Declaration and Manual indicates that the 1998 Manual conflicted with the intent of the Declaration by establishing a prohibition on an improvement that was permitted under the Declaration. Accordingly, we find that the circuit court did not err in reading the Darien Club's governing documents as such and in finding in the Association's favor when deciding the parties' motions for partial summary judgment.

¶ 33                                III. CONCLUSION

13

¶ 34        The judgment of the circuit court of Du Page County is affirmed.

¶ 35        Affirmed.